Howard McDOUGALL, Thomas F. O'Malley, R. V. Pulliam, Sr., Robert J. Baker, Loran W. Robbins, Marion M. Winstead, Jr. as Trustees of Central States, Southeast and Southwest Areas Pension Fund, Plaintiffs,

v.

Raymond J. DONOVAN, Secretary of Labor, Defendant.

Raymond J. DONOVAN, Secretary of Labor, Counter-Plaintiff,

v.

Howard McDOUGALL, Thomas F. O'Malley, R. V. Pulliam, Sr., Robert J. Baker, Loran W. Robbins, Marion M. Winstead, Harold J. Yates and Earl L. Jennings, Jr., Individually and as Trustees of Central States, Southeast and Southwest Areas Pension Fund, and Earl N. Hoekenga, and the Central Conference of Teamsters, Counter-Defendants.

No. 81 C 5891.

United States District Court, N. D. Illinois, E. D.

May 24, 1982.

James L. Coghlan, Coghlan, Joyce & Nellis, Chicago, Ill., for plaintiffs and counter-defendants.

Kenneth G. Anderson, Jacksonville, Fla., for Hoekenga, counter-defendant.

Jim Shoemake, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., Francis Carey, Chicago, Ill., for Central States, counter-defendant.

M. J. Mintz, Dickstein, Shapiro & Morin, Washington, D. C., Marvin Gittler (Local Counsel), Asher, Goodstein, Pavalon, Gitter, Greenfield & Segall, Ltd., Chicago, Ill., for the Central Conference of Teamsters, counter-defendant.

Edward Moran, Asst. U. S. Atty., Chicago, Ill., S. Michael Scadron, U. S. Dept. of Labor, Washington, D. C., for defendant and counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, the trustees of the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") filed a Complaint for Declaratory Judgment in this Court against the Secretary of Labor (the "Secretary") seeking, *inter alia*, a declaratory judgment that the Fund's acquisition of a Falcon F–20 jet aircraft from the Falcon Jet Corporation [which had acquired the jet from the Central Conference of Teamsters (the "CCT")] was not a "prohibited transaction" under § 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1106 (1976). The Secretary responded by filing an Answer to the Fund's complaint as well as a Counterclaim against the Fund and the CCT alleging that the Fund's acquisition of the jet aircraft and its leasing of hangar space from the CCT constituted prohibited transactions under ERISA. The Secretary seeks an order rescinding the jet acquisition and hangar sublease agreements and a further order requiring that the CCT restore to the Fund all monies paid by the Fund in connection with the aircraft acquisition. Presently before the Court is the CCT's motion to dismiss the Secretary's counterclaim either for lack of subject matter jurisdiction or failure to state a claim for which relief can be granted.[1] Fed.R.Civ.P. 12(b)(1), (6). For the following reasons, CCT's motion is denied.

The principle is clear that a claim should not be dismissed at this stage of the litigation unless it appears beyond doubt that the plaintiff (or counter-plaintiff) can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the Court will read the claim in the light most favorable to the party asserting it and will take the factual allegations contained therein as true. *Mathers Fund, Inc. v. Colwell,* 564 F.2d 780, 783 (7th Cir. 1977). For purposes of this motion, therefore, we will assume that the transactions in question are "prohibited transactions"

---

1. Several other motions are pending in this case. At the suggestion of the parties, we have expedited consideration of this motion in order to facilitate briefing of the Secretary's motion for summary judgment on the counterclaim.

under ERISA.[2] 29 U.S.C. § 1106(a)(1)(A) (1976).

In its motion to dismiss, the CCT argues that because it is not a pension plan "fiduciary" within the meaning of ERISA, 29 U.S.C. § 1002(21)(A) (1976), the Secretary of Labor lacks authority to seek restitution from the CCT for its participation in the prohibited transaction at issue in this case. This argument is premised on the theory that Title I of ERISA, the "labor title" under which this suit was brought, grants authority to the Secretary only to enforce standards governing the conduct of pension plan fiduciaries, not parties in interest which deal with those fiduciaries. Upon review of the language, structure and purpose of ERISA, however, the Court concludes that the CCT's reading of the statute is too narrow.

ERISA grants to the Secretary broad authority to bring civil actions "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA], or (B) to obtain other appropriate relief (i) to redress such violation, or (ii) to enforce any provision of [Title I]." 29 U.S.C. § 1132(a)(5) (1976). Although the violation at issue in this case is derived from a statute which governs the conduct of pension plan fiduciaries,[3] the equitable enforcement authority granted the Secretary is not limited solely to actions against fiduciaries.[4] *Freund v. Marshall & Isley Bank*, 485 F.Supp. 629, 641–42 (W.D. Wis.1979). Such a limitation would run directly counter to Congress' stated intention to provide the Secretary "the full range of legal and equitable remedies in both state and federal courts."[5] 1974 U.S.Code Cong. & Admin.News, S.Rpt.No.93–127, 93d Cong., 1st Sess., 4639, 4838, 4871.

Congress envisioned that the enforcement of the labor provisions of ERISA would reflect traditional principles of trust law. 1974 U.S.Code Cong. & Admin.News, 5177, 5186. *Eaves v. Penn, supra* at 462. These principles make clear that a non-fiduciary who knowingly participates in a breach of fiduciary duty, either directly or indirectly, is liable to the cestui at least to the extent the non-fiduciary has profited from the breach. *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 759 (7th Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980);[6] *Freund v. Marshall & Isley Bank, supra* at 642. *See generally,*

**2.** For purposes of this motion, all parties agree that the CCT is a "party in interest" under ERISA. 29 U.S.C. § 1002(14) (1976). The trustees of the Fund, on the other hand, are fiduciaries with respect to the Central States, Southeast and Southwest Areas Pension Fund. Many business transactions between fiduciaries and parties in interest are "prohibited transactions" under ERISA. 29 U.S.C. § 1106 (1976).

**3.** 29 U.S.C. § 1106 provides in pertinent part:
(a) Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
(A) sale or exchange, or leasing, of any property between the plan and a party in interest. . . .

**4.** The primary object of obtaining redress in this context is to restore the plan to the position it occupied prior to the prohibited transaction. *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978). Because parties in interest rather than fiduciaries typically realize the primary financial benefit from prohibited transactions (to the detriment of the pension plan), the redress the Secretary is empowered to seek un-

der ERISA often would be unattainable if the Secretary could only obtain restitution from the fiduciaries personally. In the absence of clear legislative history to the contrary, we can only assume that the broad, remedial enforcement authority granted to the Secretary is intended to effectuate the broad and remedial purposes of ERISA.

**5.** The CCT argues, of course, that Congress intended the "full range of legal and equitable remedies" to be applied only against fiduciaries, not parties in interest. This interpretation overlooks the fact that the Secretary will not often have a full range of remedies available if he can name as a defendant only one of two parties to a prohibited transaction. Moreover, in drafting this enforcement provision, Congress' attention was focused primarily on the interests of pension plan participants and beneficiaries. From their perspective, it matters little whether restitution is made from fiduciaries or parties in interest.

**6.** *Fremont* does not, as the CCT suggests, dictate dismissal of this case. In *Fremont*, a pension plan fiduciary and an employee-participant of the plan stole computer printouts, microfilm cards, customer lists and price lists from the

Restatement (Second) of Trusts § 256 (1959); G. Bogert, Trusts and Trustees, §§ 868, 901 (2d ed. 1962). ERISA should not be read so narrowly as to defeat these principles of the common law trusts.

The structure of ERISA further supports our conclusion that the Secretary has authority to seek restitution from a non-fiduciary party in interest. The CCT argues that its liability for participation in this prohibited transaction is governed exclusively by Title II (the "tax title") rather than Title I (the "labor title") of ERISA. Title II imposes upon parties in interest [which the Internal Revenue Code identifies as "disqualified persons," 26 U.S.C. § 4975(e)(2) (1976)] a 100 percent excise tax on the amount involved in a prohibited transaction. 26 U.S.C. § 4975(a), (b) (1976). Given this tax remedy, the CCT contends that Congress could not have also intended to authorize the Secretary of Labor to seek

restitution from a party in interest. The tax provisions of Title II contain a mechanism, however, under which the Secretary of Labor is empowered to attempt to "correct" or undo prohibited transactions prior to the imposition of the 100 percent excise tax by the Internal Revenue Service.[7] 26 U.S.C. § 4975(h) (1976). Moreover, Title III of ERISA makes clear that the powers granted to the Department of Labor in Title I and to the Internal Revenue Service in Title II are not mutually exclusive. The inter-departmental coordination mandated by Title III reflects the fact that Congress envisioned overlapping authority between the Department of Labor and the Internal Revenue Service in the administration and enforcement of pension plan standards under ERISA.[8] 29 U.S.C. §§ 1203, 1204 (1976).

Accordingly, the CCT's motion to dismiss is denied. It is so ordered.

---

company which employed them. The Seventh Circuit held that the fiduciary breached his statutory duty by concealing the non-fiduciary's thefts of potentially important trade secret information. *Id.* at 758. The Court declined, however, to order restitution from the non-fiduciary employee on the following theory:

> We are not saying that in an ordinary civil action against a trustee, others who have aided him, or conspired with him, in a breach of fiduciary duty may not be liable to the extent that they have profited from the breach. *See* Restatement, Second, Trusts § 256. Here, however, [the employee-participant's] act of joining in the concealment, or inaction in non-revealing as the case may be, not arising out of any duty on his part as a trustee cannot, in our opinion, be disassociated from its impact upon [the] legislatively granted rights [of employees to collect pension benefits] under § 203. There is too much interrelationship between the two aspects for us to hold otherwise.

*Id.* at 759.

The CCT suggests that the present case is not "an ordinary civil action" to restore losses to the Fund because this action was brought under ERISA. As indicated earlier, however, ERISA generally was intended to incorporate traditional principles of trust law. *Fremont* suggests that the liability of a non-fiduciary employee is not governed by traditional principles of trust law because employees enjoy a unique, affirmative right to pension benefits under § 203 of ERISA. The CCT does not enjoy any similar affirmative right under ERISA. Ac-

cordingly, there is no reason for this opinion to distinguish the law governing resolution of the present case from the traditional principles of trust law.

7. We do not imply by this opinion that § 4975(h) constitutes a separate or independent grant of authority to the Secretary of Labor. The Secretary's authority for purposes of this case is governed by Title I, 29 U.S.C. § 1132 (1976). The provisions of Title II which relate to the authority of the Secretary of Labor simply manifest the Congressional intent that disqualified persons or parties in interest who participate in prohibited transactions should not be beyond the reach of the Secretary's authority.

8. Commentators have described the overlap of enforcement authority between the Department of Labor and the Internal Revenue Service as a "jurisdictional nightmare." Cummings, Casey and Cummings, "Overlap of IRS and Labor in Regulating Compensation Plans Can Create Problems," 42 *Jnl. of Taxation*, 7 (Jan. 1975). Attempts to define the jurisdictional authority between the two departments have been only partially successful. *See* ERISA Reorg. Plan, Aug. 10, 1978.

Notwithstanding this overlap of authority, it is clear that once a party in interest makes restitution under Title I, that party cannot be subjected to the 100 percent excise tax established in Title II. Thus, the CCT cannot be subjected to double liability for its participation in this prohibited transaction.