William E. BROCK, Secretary of the
United States Department of
Labor, Plaintiff,

v.

Frank GERACE, Edward T. Hanley, John
C. Kenneally, Herman Leavitt, Vito Pit-
ta, Ronald Richardson, Vincent Sira-
bella, Mario Vaccarino, Gail Fabian,
Florence Farr, Lewis Cohen, John Cul-
lerton, Donald J. DePorter, Paul DiAm-
ico, Patrick Kane, Dominic P. Luongo,
A.M. Quarles, William Schuman, Don-
ald R. Williams, Joseph Belardi, Frank
Marolda, Jerry Burns, Ben Schmoutey,
Herbert Triplett, Michael Gaughan, Bri-
an Handleman, A.W. Mitchell, Jeff
McColl, Dale Stormer, Frederick N.
Richman, the Hotel Employees and
Restaurant Employees International
Union Welfare Fund, William L. Mey-
ers, Inc., Health Corporation of Amer-
ica, Cytex Corporation, North Ameri-
can Dental Administrators, Inc., Law-
rence A. Smith, Eastern States Casualty
Agency, Inc., Computaccounts, Tex-
Com, Inc., James V. Merlo and Frank
Pettisani, Defendants.

Civ. A. No. 85–3669.

United States District Court,
D. New Jersey.

April 21, 1986.

Richard K. Willard, Acting Asst. Atty.
Gen., Frederick M. Morgan, Jr., Surrell
Brady, John R. Tyler, John W. Toothman,
Attys., Dept. of Justice, Civ. Div., Wash-
ington, D.C., Thomas W. Greelish, U.S.
Atty., Newark, N.J., for plaintiff.

Henry F. Furst, West Orange, N.J., for defendant, Lawrence A. Smith.

John A. Miller, Kenney & Kearney, Cherry Hill, N.J., for defendant, Eastern States Cas. Agency, Inc.

Stephen M. Orlofsky, Blank, Rome, Comisky & McCauley, Haddonfield, N.J., for defendant, Tex-Com, Inc.

## OPINION

GERRY, District Judge.

On July 25, 1985, William E. Brock, Secretary of the United States Department of Labor (the Secretary), filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The defendants are the trustees and certain service providers or third-party service providers of a dental plan operated on behalf of the Hotel Employees and Restaurant Employees International Union (HEREIU) Local 54, which is located in Atlantic City, New Jersey. The Secretary alleges that the defendant trustees of the Local 54 dental plan breached their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, by failing to act, *inter alia,* solely for the interests of the dental plan's beneficiaries and by causing the plan to suffer ongoing financial losses. The Secretary further alleges that the non-fiduciary defendants, who have provided services with respect to the plan, have knowingly participated in these fiduciary breaches for their own undue profit and have thereby caused the plan to suffer ongoing losses.

According to the complaint, HEREIU Local 54 is a labor organization which represents approximately 18,500 hotel and restaurant employees in Southern New Jersey. Most of these employees work at the casino hotels in Atlantic City. Since 1975, these employees have received dental benefits through the HEREIU Welfare Fund, which was established by the international union and serves other locals, as well as Local 54. The defendant trustees act as the "named fiduciaries" to the nationwide plan within the meaning of 29 U.S.C.

§ 1102. On January 17, 1975, defendant William L. Meyers, Inc. contracted with the plan to act as its "contract administrator" on behalf of the trustees.

In June of 1980, defendant William L. Meyers, Inc. allegedly solicited bids for the provision of dental services on behalf of Local 54 employees. The trustees initially selected American Dental Consultants, but this organization failed to obtain the certificate of authority required under New Jersey state law. Ultimately, the plan reached an agreement with defendant North American Dental Plans, Inc. of Pennsylvania (NADP), a subsidiary of defendant Health Corporation of America (HCA). Later, in 1982, the plan trustees determined to enter into a long-term agreement with NADP "and/or" North American Dental Administrators, Inc. (NADA), another wholly-owned subsidiary of defendant HCA.

Under its agreement with the Welfare Fund, NADP allegedly received $15.85 per month per member, with a guaranteed payment for 6,000 participants per month and a built-in increase of 8% in the monthly fee each year. Of this amount, defendants HCA/NADP allegedly kept $4.00 per member per month for administrative fees and paid the rest to dental service providers such as defendant Dr. Frank Pettisani. Plaintiff alleges that these administrative fees paid to HCA and its subsidiaries were in excess of the value of the services rendered.

In addition to the foregoing, the complaint alleges that since 1975 HCA and NADP had been parties to an agreement with Rittenhouse Consulting Enterprises, Ltd. (Rittenhouse), a corporation owned and operated by defendant Lawrence A. Smith, pursuant to which Rittenhouse promised to act on behalf of HCA and its subsidiaries as a "marketing representative" and "marketing consultant." On November 24, 1981, Lawrence A. Smith and HCA signed an "addendum" to this contract pursuant to which Rittenhouse agreed to provide NADP "secretarial" and "complaint" services with respect to the Local

54 dental plan. NADP agreed to pay Rittenhouse $2.00 per month per member for these services. In addition, by a separate oral agreement with defendant Lawrence A. Smith, NADP was allegedly required to pay Rittenhouse a "finder's fee" in the amount of $100,000 per year. In February 1983, the HCA/NADP contract with Rittenhouse was transferred to defendant Eastern States Casualty, Inc., another company owned by defendant Lawrence A. Smith. Subsequently, Lawrence A. Smith transferred his business with HCA/NADP to a partnership, defendant Computaccounts, located in Cherry Hill, New Jersey. According to plaintiff, Eastern States and Lawrence A. Smith (through Eastern States) reaped undue rewards from the Local 54 dental plan through these series of transactions.

In early 1982, defendant Lawrence A. Smith and Joseph Cusumano, President of HCA, interviewed a dentist named Dr. Frank Pettisani and offered him the Local 54 dental business. It was "recommended" to Dr. Pettisani that he contract with defendant Tex-Com, Inc. for the computer services. Tex-Com is allegedly wholly owned by Molly Smith, Lawrence A. Smith's mother. Pursuant to an agreement entered into in April 1982, Dr. Pettisani agreed to pay Tex-Com, Inc. a "conversion fee" of $25,000 within sixty (60) days, plus a "monthly service fee" at a rate of $2,393 for each Local 54 "member file" for the first 6,500 members and $2.50 for each member over 6,500. Here, too, the plaintiff alleges that the contractual arrangement resulted in the undue enrichment of Tex-Com.

In sum, based upon the foregoing factual recitation, the plaintiff alleges, *inter alia,* that defendants Lawrence A. Smith, Eastern States Casualty Agency, Inc., and Tex-Com, Inc. were unduly enriched, and that all three knowingly participated in breaches of fiduciary duties owed to the HEREIU Welfare Fund.

This case is presently before the court on motions by defendants Lawrence A. Smith, Eastern States Casualty Agency, Inc. and Tex-Com, Inc. to dismiss the complaint against them pursuant to F.R.Civ.P. 12(b)(6). These defendants contend that the complaint fails to state a claim upon which relief can be granted against them because they fall outside the class of persons whose conduct is governed by and subject to the provisions of ERISA. Not surprisingly, the Government maintains that the spirit, if not the letter, of ERISA is broad enough to apply to the moving defendants.

In order to resolve the pending motions, it is important to focus clearly on the narrow area of dispute among the parties. There is no allegation here that the moving defendants are either fiduciaries or parties in interest as those terms are defined by ERISA, 29 U.S.C. §§ 1002(21)(A) and (14). What plaintiff does allege is that the defendants knowingly participated in the breaches of fiduciary duties committed by others, and that this participation resulted in their own undue enrichment. The primary issue before this court can therefore be summed up as follows: can non-fiduciaries be held liable under ERISA for knowingly participating in a breach of trust by a fiduciary? The Secretary answers the question in the affirmative, noting that under common law trust principles, which courts have often used to interpret and enforce ERISA, knowing participation in a breach of a fiduciary's duties renders a non-fiduciary liable to the trust. Defendant Lawrence A. Smith agrees that under ERISA liability may be imposed upon a non-fiduciary for knowingly participating with a fiduciary in a breach of trust. However, Smith argues that the case law does not extend liability to a third-party consultant or provider to a plan, whose sole compensation for such services has come from the direct service provider. Smith claims that since there is no allegation that he directly received assets from the Welfare Fund, he is not liable under ERISA. Defendants Eastern States Casualty Agency, Inc. and Tex-Com, Inc. take a third approach. According to these defendants, non-fiduciaries cannot be held liable at all under ERISA for knowingly participating in breaches of fiduciary duties committed

by others. Eastern States and Tex-Com assert that the cases which hold to the contrary are wrongly decided, fail to comport with the intent of Congress and should not be followed here.

Although there is no Third Circuit precedent which squarely addresses the issue presented here, this court does not write on a clean slate. In order to evaluate the positions taken by the parties, it is instructive to examine ERISA and its legislative history, as well as the out-of-circuit case law which treats with the liability of non-fiduciaries under ERISA. ERISA itself is a comprehensive remedial statute designed to protect the interests of participants and beneficiaries of employee benefit plans. *Eaves v. Penn,* 587 F.2d 453, 457 (10th Cir.1978); 29 U.S.C. § 1001(b). Like other remedial legislation, ERISA should be given a liberal construction in order to carry out its purposes of protecting the employees' interests and preserving the integrity of plan assets. *Marshall v. Kelly,* 465 F.Supp. 341, 349 (W.D.Okla.1978). The legislative history clearly demonstrates that in enacting ERISA Congress intended

> to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of [Title I of ERISA].... The intent of the Committee [on Labor and Public Welfare] is to provide a full range of legal and equitable remedies.

S.Rep. No. 127, 93rd Cong., 2nd Sess., *reprinted in* 1974 *U.S.Code Cong. & Ad. News,* 4639, 4871. The statute itself explicitly confers upon the Secretary broad authority to bring civil actions to remedy ERISA violations. In pertinent part, the statute provides that the Secretary may bring suit

(A) to enjoin any act or practice which violates any provision of [Title I of ERISA]; or

(B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [Title I of ERISA].

29 U.S.C. § 1132(a)(5).

At the heart of the present dispute between the Secretary and the non-fiduciary defendants is the proper interpretation of § 1132(a)(5). The Secretary reads this statutory provision as authorizing suits against non-fiduciaries for injunctive and other equitable relief. In support of this position, the Secretary points to the opinion in *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979), an oft-cited case involving, *inter alia,* the liability of non-fiduciaries under ERISA. In *Freund,* the court found a number of fiduciary breaches by current and former trustees of an employee pension benefit plan stemming from the investment of virtually all of the plan's assets in loans to sponsoring companies. The fiduciaries also failed to adequately provide for the plan's management after the controlling shareholders of the companies sold their shares to a single buyer who bankrupted the consolidated entity. The *Freund* court found that the shareholders, non-fiduciaries under ERISA, had been aware that the sale would harm the plan but nevertheless knowingly participated in the breach of trust. *Freund,* 485 F.Supp. at 642. In the court's view, this was a sufficient basis for the imposition of liability on them under ERISA. The district judge ruled that §§ 1132(a)(3) and (5) expressly preserve the authority of a court to award whatever equitable relief it deems appropriate to remedy the proven fiduciary violations. Thus, the court found that

> [w]hile only fiduciaries can violate the fiduciary responsibility provisions of Title I of ERISA, it does not follow from that fact that relief may be awarded only against the breaching fiduciaries. In view of the expressed congressional intent in enacting ERISA 'to make applicable the law of trusts,' the Court is fully empowered to award the relief available in traditional trust law against non-fiduciaries who knowingly participate, either directly or through an agent, in a breach of trust.

*Freund,* 485 F.Supp. at 641–42 (footnote omitted).

Under the traditional principles of trust law alluded to in *Freund,* a third party who

assisted a trustee in committing a breach of trust would be held liable in an action brought by the beneficiary. Restatement (Second) of Trusts § 326 (1959); Bogert, *Trusts and Trustees* § 901 (rev. 2d ed. 1982). In addition, the trustee and the third party could be joined in a suit for the recovery of the value of the trust property lost on account of the breach. Bogert, *Trusts and Trustees* § 868. There are two elements to this wrongful participation in a breach of trust by another: (1) an act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time of the transaction that the transaction amounted to a breach of trust. Bogert, *Trusts and Trustees* § 901, *cited in Freund,* 485 F.Supp. at 642.

Subsequent to the ruling in *Freund,* a number of other courts have also concluded that the legislative intent behind ERISA and the principles developed under the common law of trusts authorize the imposition of liability under ERISA against non-fiduciaries. In *McDougall v. Donovan,* 539 F.Supp. 596 (N.D.Ill.1982), the trustees of a union pension fund sought a declaratory judgment that the fund's acquisition of a jet aircraft was not a "prohibited transaction" under ERISA, 29 U.S.C. § 1106. The Secretary filed a counterclaim alleging that the fund's acquisition of the aircraft and its leasing of hangar space did constitute prohibited transactions. On the fund's motion to dismiss the counterclaim, the trial court held that the Secretary had authority not only to seek restitution from pension plan fiduciaries for their participation in the transactions, but also to seek restitution from a party in interest which dealt with those fiduciaries. The court, referring to the *Freund* opinion, determined that although the violation at issue in the case derived from a statute governing the conduct of pension plan fiduciaries, the equitable enforcement authority granted to the Secretary in 29 U.S.C. § 1132(a)(5) is not limited solely to actions against fiduciaries. *McDougall,* 539 F.Supp. at 598. The court reasoned that since "parties in interest rather than fiduciaries typically realize the primary financial benefit from

prohibited transactions ..., the redress the Secretary is empowered to seek under ERISA often would be unattainable if the Secretary could only obtain restitution from the fiduciaries personally." *Id.* at 598 n. 4. The court suggested that in the absence of clear legislative history to the contrary, the enforcement authority of the Secretary should be broadly construed, so as to effectuate the broad and remedial purposes of ERISA. Although *McDougall* is distinguishable in that it involved a "prohibited transaction" between a fiduciary and a party-in-interest—circumstances not present here—the case is nevertheless instructive since it concludes that the imposition of liability on non-fiduciaries under § 1132(a)(5) is in keeping with the congressional intent behind ERISA.

In accord with *Freund* and *McDougall* is *Donovan v. Daugherty,* 550 F.Supp. 390 (S.D.Ala.1982). In *Daugherty,* an attorney named Thomas Galloway, who had been principal legal counsel to the plans involved, knowingly participated in the decision of the trustees to extend coverage to him as a participant in the plans and to pay him benefits from the plans. This decision was a clear violation of ERISA, § 1104(a)(1)(D). The court concluded that while Galloway may not have been a fiduciary to the plan, he was nevertheless liable for the consequences of the trustees breaches, at least to the extent that he was personally enriched. *Id.* at 411. The court relied upon *Freund* and the common law of trusts in reaching this conclusion.

A recent district court opinion out of the Third Circuit is in accord. In *Donovan v. Bryans,* 566 F.Supp. 1258 (E.D.Pa.1983), Chief Judge Luongo of the Eastern District of Pennsylvania ordered a non-fiduciary to repay, with interest, funds which he knew were illegally loaned to him by pension fund fiduciaries. Here, too, the court found that an action by the Secretary against a non-fiduciary falls within the broad enforcement authority conferred by § 1132(a)(5). Having benefited from his collaboration with fiduciaries in their breach of duty to the plan, the non-fiduci-

ary was under a duty to make restitution to the plan for the benefit received. *Bryans,* 566 F.Supp. at 1267.

The foregoing discussion of *Freund, McDougall, Daugherty* and *Bryans,* though by no means intended to be exhaustive, nonetheless touches upon the arguments most often advanced in support of non-fiduciary liability under ERISA. A number of other courts have similarly held non-fiduciaries liable, for essentially the reasons mentioned above. *E.g., Donovan v. Schmoutey,* 592 F.Supp. 1361 (D.Nev. 1984) (companies which received illegal loans from a pension fund were held liable as non-fiduciaries for the breaches of trust by the fund's fiduciaries). In response to these cases, the defendants have failed to come forward with any persuasive case authority holding that non-fiduciaries cannot be held liable under ERISA. The defendants can only point to the Seventh Circuit opinion in *Fremont v. McGraw-Edison Co.,* 606 F.2d 752, 759 (7th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). In *Fremont,* a fiduciary breached his statutory duties under ERISA when he and a fellow employee, a non-fiduciary who participated in the company's pension plan, stole trade secrets from the company. The Seventh Circuit held that the employer could assert a claim for breach of fiduciary duty under ERISA only against the employee who was a plan trustee. The court went on to say, however, that the non-fiduciary employee could not be held liable. Three years later in *Thornton v. Evans,* 692 F.2d 1064 (7th Cir.1982), the Seventh Circuit retreated from its stand in *Fremont.* The *Thornton* court referred to the holding in *Fremont* as "limited [in] scope" and "made in the context of a unique factual setting...." *Thornton,* 692 F.2d at 1078. Specifically, the *Thornton* court suggested that *Fremont* had declined to impose liability on a non-fiduciary employee solely because the non-fiduciary employee was himself a plan participant with vested pension rights under ERISA. *Thornton,* 692 F.2d at 1078. The *Thornton* court found that it was not confronted with any mitigating factors similar to those in *Fremont.* The *Thornton* court therefore reversed the decision of the trial court to dismiss the complaint against the non-fiduciaries for failure to state a claim on which relief could be granted. The *Thornton* court concluded that the plaintiffs may have stated a claim under ERISA on the theory that the non-fiduciary defendants conspired with parties who were fiduciaries to breach the duties imposed by ERISA. *Thornton,* 692 F.2d at 1078. The Seventh Circuit also reaffirmed the general principle, developed in the common law of trusts, that those persons who aid or conspire with a trustee in a breach of fiduciary duty may be held liable to the extent that they have profited from the breach. The circuit court also cited with approval the district court opinion in *Freund,* which found the same relief against non-fiduciaries to be available under ERISA.

Rather than provide the court with case authority supporting their position, the defendants have chosen to distinguish the cases cited by the Government and, in the case of Eastern States and Tex-Com, to suggest that the court reject them outright. Lawrence Smith argues that none of the cases discussed above extend liability to a third party service provider or consultant to a plan, whose sole compensation for such services has been by the direct service provider. According to Smith, liability could only be imposed if there were a transaction involving the money or other assets of the fund. Eastern States and Tex-Com advocate an even narrower interpretation of non-fiduciary liability under ERISA. They maintain that in the absence of specific statutory authority, the Secretary cannot obtain relief against parties who are not fiduciaries or parties in interest. Because the court believes that the defendants have taken an unnecessarily restrictive view of ERISA, and because the court believes that the broad remedial purposes of that statute can best be effectuated by permitting the action against the non-fiduciary defendants, the court declines to adopt the reasoning urged upon us by Smith, Eastern States and Tex-Com.

Turning first to the arguments suggested by Eastern States and Tex-Com, the court believes that the enforcement powers conferred upon the Secretary in 29 U.S.C. § 1132(a)(5) are sufficiently broad to authorize the instant suit against them. The court adopts the position taken by the district court in *Freund,* i.e., that although the fiduciary provisions of Title I of ERISA impose specific duties on fiduciaries, "it does not follow from that fact that relief may be awarded only against the breaching fiduciaries." *Freund,* 485 F.Supp. at 641. Such a limitation would contravene Congress' stated intention that the Secretary have a full range of legal and equitable remedies available to protect plan participants and beneficiaries. S.Rep. No. 127, 93rd Cong. 2nd Sess., *reprinted in* 1974 U.S.Cong. & Ad.News 4639, 4871. In the present case, the Local 54 dental plan's participants and beneficiaries would be denied full relief if the Secretary were unable to recover from non-fiduciaries who were shown to have unjustly reaped substantial financial rewards from their knowing participation in breaches of fiduciary duties. In the absence of any specific legislative history to the contrary, "no sound reason appears why ERISA should be emasculated by a construction which precludes civil actions against non-fiduciaries." *Donovan v. The Unicorn Group,* 3 Employee Benefits (BNA) 1665, 1667 (S.D.N.Y.1982). On the other hand, the well-established principles developed under the common law of trusts as discussed above provide a sound basis for imposing liability under ERISA on non-fiduciaries.

The court similarly rejects the defendants' arguments that liability may not be imposed where the non-fiduciaries did not deal directly with the fiduciaries, or where they did not receive benefits directly from the fund. The defendants have not provided the court with any case authority which would suggest that a non-fiduciary's knowing participation in a breach of trust by a fiduciary is rendered non-actionable because the non-fiduciary's participation is indirect, rather than direct. Indeed, such a construction of a non-fiduciary's liability would fly in the face of common sense. It would permit a non-fiduciary to shield himself from liability simply by employing the expedient of an intermediary. The illogic of the defendants' position can best be illustrated by the hypothetical set forth at p. 19 of the Secretary's brief. Assume that A is a fiduciary of a trust, and B and C are non-fiduciaries. C devises a scheme whereby he could profit from A's breach of his fiduciary duties. C sends B to propose the scheme to A. A, who never meets C, agrees to B's proposition and carries out the plan. According to the defendants in this case, only A and B could be held liable, while C would be able to retain his ill-gotten gain. The court finds this position to be wholly without merit. If the evidence is sufficient to demonstrate C's knowing participation in A's breach of his fiduciary duties, C should also be subject to liability. ERISA cannot and must not be construed to allow non-fiduciaries to do indirectly what they are prohibited from doing directly.

For all of the foregoing reasons, the motions by defendants Lawrence A. Smith, Eastern States Casualty Agency, Inc. and Tex-Com, Inc. to dismiss the complaints against them pursuant to F.R.Civ.P. 12(b)(6) will be denied.