SOUTHERN CALIFORNIA MEAT CUT-
TERS UNIONS AND FOOD EMPLOY-
ERS PENSION TRUST FUND, an ex-
press trust; James S. Bird, Jerome M.
Budinger, Gregory M. Conger, David R.
Cox, James R. Gaddis, Raymond L.
Long, William R. McMahon, Gerald
McTeague, Michael A. Sabol, as trust-
ees of Southern California Meat Cut-
ters Unions and Food Employers Pen-
sion Trust Fund, Plaintiffs,

v.

INVESTORS RESEARCH COMPANY, a
partnership; Bateman Eichler, Hill
Richards, a corporation, and Ritt Ber-
ry, an individual, Defendants.

No. CV 87–5184–RMT(GHKx).

United States District Court,
C.D. California.

June 8, 1988.

John R. St. John, Lawrence J. McLaugh-
lin, Nanette B. Zamost, McLaughlin & Ir-
vin, Los Angeles, Cal., for plaintiffs.

J. Terry Schwartz, Dana M. Sabraw,
Price, Postel & Parma, Santa Barbara, Cal.,
for defendant Investors Research Co.

Kindel & Anderson, Craig B. Jorgensen,
Steven P. Rice, Michael R.E. Sanders, Los
Angeles, Cal., for Bateman Eichler, Hill
Richards, Inc. and Ritt Berry.

## ORDER GRANTING IN PART AND DE-
NYING IN PART MOTION
TO DISMISS

TAKASUGI, District Judge.

This matter has come before the court on
the motion by defendants Bateman Eichler,
Hill Richards, Inc. ("BEHR") and Ritt
Berry ("Berry") to dismiss the claims
alleged against them. Said claims are the
second count for intentional infliction of

emotional distress, fifth count for fraud and sixth count for violation of the Securities and Exchange Act of 1934, Section 10(b) and Rule 10b–5.

The complaint herein was filed by the Southern California Meat Cutters Unions and Food Employers Pension Trust Fund and the individual trustees (collectively "Pension Trust Fund") against Investors Research Company ("IRC"), BEHR and Berry. According to the complaint, the Pension Trust Fund entered into a written agreement ("Agreement") with defendant IRC under which IRC was to invest and manage some of plaintiffs' assets. The Agreement specified that IRC would carry out its management of the assets in accordance with, but not limited to, provisions of the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), including the fiduciary standards of § 1104(a).

The Agreement also provided that IRC could utilize the service of any independent securities brokerage firm or firms it deemed appropriate to the extent such firms were competitive with respect to price and execution. From May 1, 1984 through April 1985, IRC's purchases and trades for the Pension Trust Fund were placed exclusively through BEHR and its employee Berry and from April 1985 through November 1986 substantially all such trades were placed through defendant Berry. Plaintiffs allege that IRC had a special agreement with BEHR and Berry, in violation of their fiduciary duty under ERISA and the Agreement, to place all or at least most of the trades from the Pension Trust Fund through BEHR and Berry without regard to the cost to the plaintiffs. Plaintiffs further allege that BEHR and Berry induced this special agreement between themselves and IRC by promising IRC business advantages and benefits. Allegedly, BEHR and Berry's rates were not competitive, but rather exceeded both the average per share broker commission and the average per share broker execution cost of other brokers, and IRC did not divulge to plaintiffs the nature of its relationship with BEHR and Berry. Consequently, plaintiffs allege, the Pension Trust Fund lost a total of $167,000 from May 1, 1984 to December 31, 1985.

## I. *The State Law Claims and ERISA Preemption*

■ The parties agree that BEHR and Berry are not fiduciaries within the scope of ERISA; the parties disagree, however, as to whether this precludes ERISA preemption. Whether ERISA preempts state law claims for nonfiduciaries is a question of first impression for this circuit. Other courts that have considered this question have gone both ways.

Plaintiffs rely on three cases to support their conclusion that ERISA does not regulate nonfiduciary conduct: *Munoz v. Prudential Ins. Co. of America,* 633 F.Supp. 564 (D.Colo.1986); *Blatt v. Marshall and Lassman,* 633 F.Supp. 712 (E.D.N.Y.1986); and *Issacs v. Group Health, Inc.,* 668 F.Supp. 306 (S.D.N.Y.1987). *Munoz* involved a nonfiduciary administrator of a self-funded employee benefit plan, and the court there found that ERISA did not preempt the plaintiff's state common law claims against the nonfiduciary defendant. The court in *Munoz* stated, in pertinent part, that:

I do not find it to be Congress' intent to preempt state common law liabilities where there is no regulation to fill the void. In this vein, the state common law invoked by plaintiff does not denigrate the objectives of ERISA because regulation of nonfiduciary behavior is not an ERISA objective.

633 F.Supp. at 571. As is discussed below, it appears that the *Munoz* court's interpretation of ERISA is the more reasonable; defendants, however, correctly point out that *Munoz* is factually distinguishable from the present case because there the only wrongdoer was a nonfiduciary whereas here the nonfiduciary was allegedly involved in a conspiracy with an ERISA fiduciary both of whom harmed the plan; this distinction is crucial in the analysis of existing pertinent case law.

The second case relied on by plaintiffs, *Blatt v. Marshall and Lassman,* is of

questionable value for the present analysis because that case was reversed by the Second Circuit Court of Appeals (at 812 F.2d 810 where the court found that the defendants were in fact fiduciaries under ERISA). The third case, *Issacs v. Group Health, Inc.,* is also of questionable value to plaintiffs' position. *Issacs* holds that state law claims against nonfiduciaries are not preempted by ERISA. However, the court distinguished its case from those in which nonfiduciaries are alleged to have participated in a breach of trust by an ERISA fiduciary. 668 F.Supp. at p. 313 n. 10.

Defendants BEHR and Berry rely on five cases that appear to be factually similar to the present case because each case involves the actions of both an ERISA fiduciary and a nonfiduciary acting together against the best interest of the trust fund. In *Thornton v. Evans,* 692 F.2d 1064 (7th Cir.1982) the court held that because nonfiduciary defendants had conspired with parties who were ERISA fiduciaries, claims against the nonfiduciary defendants could be stated under ERISA. *id.* at 1078. In a footnote the court noted that "[a] necessary element of plaintiffs' claims against the nonfiduciary defendants is that they conspired with fiduciaries (who need not be defendants in this action), and if this element is lacking, the court is without ERISA jurisdiction over these defendants." *id.* n. 34. In the present case, plaintiffs have alleged that "[d]efendants knowingly and willfully conspired and agreed among themselves to defraud and deceive plaintiffs." It therefore appears that the criteria ennunciated in *Thornton* have been met here.

*Brock v. Gerace,* 635 F.Supp. 563 (D.N.J. 1986) is the next case relied on by defendants. *Brock* involved an alleged conspiracy between trustees and nonfiduciary third-parties to cause financial loss to the plan by charging excessive fees. The court in *Brock* looked to legislative history and case law and found that ERISA was primarily remedial legislation, designed to protect employee benefit plans and their beneficiaries, and that it should be liberally construed to carry out its purpose. The court also noted that "well-established prin-

ciples developed under common law of trusts ... provide a sound basis for imposing liability under ERISA on nonfiduciaries." *id.* at 569. The court in *Brock* refused to dismiss the claims against the third-party nonfiduciary because said third-party was allegedly involved in a conspiracy with ERISA fiduciaries. The other cases discussed by BEHR and Berry hold, in pertinent part, that nonfiduciaries are liable under ERISA for their "knowing participation" with a fiduciary in a breach of trust. *See Freund v. Marshall & Illsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979); *Donovan v. Schmoutey,* 592 F.Supp. 1361 (D.Nev.1984); *Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143 (D.C.C. 1986).

Analysis of the relevant case law outside of the Ninth Circuit would indicate that the present case factually resembles those cases which support defendants BEHR and Berry's contention that ERISA preempts plaintiffs' state law claims here. It appears, however, that the cases which defendants rely on are based on a factual distinction which is not logical: that ERISA intended to treat nonfiduciaries who conspired with fiduciaries and harmed a plan differently from nonfiduciaries who directly harmed a plan without the assistance of fiduciaries. A more logical presumption is that Congress intended for all nonfiduciaries either to be regulated by ERISA or not to be regulated by ERISA, since nowhere in the statute is there an indication that Congress intended only certain kinds of nonfiduciary behavior to fall within the scope of federal, as opposed to state, regulation.

In deciding whether nonfiduciary conduct should be regulated by ERISA, an inconsistency between sections of that act must be resolved. Section 1109 is the remedial section of ERISA. It is narrowly written and explicitly provides for liability of an ERISA fiduciary caused by breach of fiduciary duty. It further provides that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he

ceased to be a fiduciary." 29 U.S.C. § 1109(b). § 1132 provides for civil enforcement and subsection (a) lists persons who may sue and whom may be sued. Section 1132(a) is no broader than § 1109 with respect to who may be a proper defendant to a claim for breach of fiduciary duty. In fact, the only claim listed under § 1132(a) that could arguably be brought against someone who is not the administrator, the plan, or a fiduciary, is a claim for equitable relief. 29 U.S.C. § 1132(a)(3). Section 1144 however uses broad language stating that any and all state laws which "relate to" an employee benefit plan are preempted by ERISA.[1] In order for ERISA to be consistent, and in order to solve the present controversy, either § 1109 must be construed broadly to include a remedy against nonfiduciaries, or § 1144 must be construed narrowly so as not to preempt state law remedies against nonfiduciaries. If § 1144 is construed broadly, to preempt state law claims against nonfiduciaries, then the logical conclusion is that nonfiduciary conduct is regulated by ERISA so long as it "relates to" an employee benefit plan even though ERISA does not expressly provide a remedy for nonfiduciary misconduct and expressly provides for no liability in the case of a fiduciary's breach of duty that occurs before becoming or after ceasing to be a fiduciary. If, on the other hand, § 1109 is construed to provide liability only of fiduciaries, as a literal interpretation implies, the reasonable conclusion is that ERISA preemption was only intended to go as far as the remedies for which ERISA provides, *i.e.*, fiduciary misconduct. For the reasons discussed below, the latter appears to be the better reasoning.

It seems that Congress implicitly intended for the narrowness of § 1109 to outweigh the apparent breadth of § 1144. The overall congressional intent behind the creation of ERISA was:

> ... to 'protect ... plan participants in employee benefit plans and their beneficiaries, by requiring the disclosure and

reporting of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts'.

§ 2, as set forth in 29 U.S.C. § 100(b). In order to carry out its goal of protecting employee benefit plans, their beneficiaries and their participants, Congress enacted § 1109. Because § 1109 is narrow regarding to whom and what it applies, it is apparent that Congress felt that regulating fiduciaries, those individuals who owe the highest standard of care to the plans and who have discretionary control over the assets of the plans, would provide adequate protection of employee benefit plans. Under § 1109, a fiduciary who breaches the high standard of care owed to the plan is personally liable to restore the plan to the position it would be in absent the breach of duty. The fact that ERISA is a comprehensive statute and yet does not provide a remedy for nonfiduciary misconduct is a good indication that Congress did not intend to regulate such behavior, but rather, that Congress believed regulation of fiduciary behavior would sufficiently protect benefit plans. Further support for this conclusion can be found in § 1109(b), which precludes liability for breaches of fiduciary duty occurring before becoming and after ceasing to be a fiduciary. If such a fiduciary cannot be liable, could Congress have intended for nonfiduciaries to be liable?

Courts which have held that nonfiduciary behavior, if in conjunction with misconduct of an ERISA fiduciary, is regulated by ERISA, have not only taken the liberty to make a distinction where no indication of such a distinction exists in the statute: that the statute intended to cover some, but not all, kinds of nonfiduciary behavior; but, these courts have also presumed that the regulation for nonfiduciary misconduct would be the same as that for fiduciary misconduct. It appears that although the

---

1. There are two exceptions to the preemption clause which are not relevant in the present case: the deemer clause, and the saving clause.

preemptive clause has been interpreted broadly, the purpose of the preemptive clause is to provide uniform federal laws and access for those causes of action for which ERISA provides remedies. Furthermore, this court can find no indication that Congress intended to regulate only certain nonfiduciary behavior while not expressly providing a remedy for any nonfiduciary misconduct. Accordingly, to carry out the overriding purpose behind ERISA, protecting employee benefit plans, and their beneficiaries and participants, § 1109 must necessarily outweigh § 1144. This conclusion also provides for a consistent approach regarding nonfiduciary misconduct. Consequently, BEHR and Berry's motion to dismiss plaintiffs' state law claims should be denied.

II. *Whether plaintiffs' sixth claim for relief should be dismissed as to defendants BEHR and Berry for failure to state a claim under § 10(b) of the Securities and Exchange Act and Rule 10b–5*

 Plaintiffs' sixth claim for relief is against all defendants for securities fraud under § 10(b) and Rule 10b–5 of the 1934 Securities and Exchange Act. Defendants contend that plaintiffs' Complaint does not specify what security is involved in this case which would bring them within the scope of § 10(b) and Rule 10b–5, and that, even if plaintiffs have adequately stated that a security is involved within the meaning of a § 10(b) and Rule 10b–5, they have not adequately pleaded any reliance on their part based on a misrepresentation or omission which resulted in the purchase or sale of that security.

It is unclear from the complaint what plaintiffs allege to be the security involved and whether there is a connection between the security and the alleged misrepresentation such that the purchase or sale of that security was induced by plaintiffs' reliance on the misrepresentation. As a result, plaintiffs' sixth claim fails to give defendants sufficient notice of the claim.

Accordingly,

IT IS ORDERED that the motion by defendants BEHR and Berry to dismiss is denied as to the second and fifth counts and granted, with leave to amend, as to the sixth count. Plaintiffs shall file a first amended complaint no later than June 30, 1988.