**James G. ROLLO**

v.

**MAXICARE OF LOUISIANA, INC. and Carl E. Kemmerly, III, M.D.**

**Civ. A. No. 88–2131.**

United States District Court, E.D. Louisiana.

Sept. 6, 1988.

Jennifer N. Willis, Mark S. Goldstein, New Orleans, La., for James Rollo.

Brook, Morial, Cassibry, Fraiche & Pizza, Donnald D. Fraiche, Trial Atty., Montgomery, Barnett, Brown, Read, Hammond & Mintz, Stanley McDermott, Jr., New Orleans, La., for Maxicare of La., Carl E. Kemmerly, III, M.D.

## ORDER AND REASONS

FELDMAN, District Judge.

This suit, and defendants' motion to dismiss or, alternatively, for summary judgment focus on a persistent and hotly-debated issue: the extent and nature of ERISA's preemption of state law claims.

Plaintiff, James G. Rollo, an employee of Martin–Marietta, was injured in a non-work-related automobile accident in October of 1986. His dispute arises from the circumstances of his subsequent medical care. At the time of the accident, Rollo was a member of a health care plan administered on behalf of Martin–Marietta by defendant Maxicare of Louisiana, Inc. Maxicare is a health maintenance organization. As a part of the Martin–Marietta plan, Maxicare contracted with the Brown–McHardy Clinic, an Independent Physicians Association, to provide medical services for plan members, like Rollo.

Rollo filed suit in state court asserting four grounds for recovery: tortious interference with his relationship with his physician, breach of contract, intentional infliction of emotional distress, and unfair and deceptive trade practices. The defendants removed the action, claiming that federal law, the Employment Retirement Income Security Act of 1974, preempts plaintiff's state law claims. The defendants then moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment. The defendants coupled their motion on several grounds, including their preemption defense, with the assertion of state law defenses. Insofar as the motion concerned state law defenses, the Court denied it without prejudice. Animated by the ERISA preemptive issue, the Court decided to entertain that part of the motion which concerned preemption first.

### I. *Subject Matter Jurisdiction*

At the threshold, one must first ask whether this Court has subject matter jurisdiction.

■ The defendants contend that federal question jurisdiction is present. As a general matter, federal preemption is simply a defense which does not necessarily appear on the face of a plaintiff's well-pleaded complaint. As such, the defense generally does not support removal. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed.2d 70 (1936)). In this case, as in *Taylor*, the plaintiff's complaint purports to assert only state law causes of action. The *Taylor* Court, nonetheless, found in a case strikingly similar to the present one, that the civil enforcement provisions of ERISA do provide a basis for removal.

The *Taylor* Court held that the preemptive force of the ERISA civil enforcement provisions was "so powerful as to displace entirely any state cause of action ..." and

that "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the statute]." *Id.*, 107 S.Ct. at 1546–47 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983)). Thus, because the provisions of ERISA relied upon in this case, as in *Taylor*, have such preemptive force, this Court has jurisdiction over the subject matter of this dispute.[1]

## II. *Preemption of State Law Causes of Action*

■ This Court holds that the plaintiff's suit is preempted by federal law, and must therefore be dismissed because of the absence of any claims under ERISA.

The preemptive nature of the ERISA civil enforcement provisions is singularly a textual matter which also explores congressional intent. *See Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Preliminarily, the Court must determine whether or not this case involves a "plan" of the type contemplated by ERISA. In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc), the Eleventh Circuit explained that:

"a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of

beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373; *Accord Tucker v. Employers Life Insurance Co.*, 689 F.Supp. 1073 (N.D. Ala.1988). Rollo's complaint, though it does not specifically refer to an employee welfare plan, concedes the essentials for establishing the presence of such a plan. Rollo alleged that: "As a consequence of his employment with Martin–Marietta, Inc., [he] is entitled to health care through Maxi-care ..., a health maintenance organization." Moreover, an employee benefit plan can be either a welfare benefit plan or a pension plan. A welfare benefit plan is any employer program (just like Martin–Marietta's) which provides medical, surgical or other hospital benefits in the event of sickness, accident or disability. 29 U.S.C. § 1002(1). See *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987).

As to preemption, a look at ERISA's statutory scheme is the starting point. ERISA speaks on preemption in three different textual ways: the preemptive clause, the saving clause, and the deemer clause. 29 U.S.C. § 1144(a), (b)(2)(A), (b)(2)(B).[2] In *Pilot Life* the Supreme Court described the statutory scheme as follows:

"If a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted.... The saving clause excepts from the preemption clause laws that 'regulat[e] insurance.' ... The deemer clause makes clear that a state law that 'purport[s] to

---

1. *See Beers v. North American Van Lines, Inc.*, 836 F.2d 910 (5th Cir.1988). The *Beers* court rejected a claim of subject matter jurisdiction based upon the purported preemptive effect of another federal statute. The Fifth Circuit noted, however: "We find no manifest intent, *of the type contemplated in Taylor*, to make this state claim removable to federal court." *Id.* at 913 n. 3 (emphasis added).

2. Section 1144(a), the preemptive clause, provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."
29 U.S.C. § 1144(a) (1982). Section 1144(b)(2)(A), the saving clause, provides, in turn:

"Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."
29 U.S.C. § 1144(b)(2)(A) (1982). Finally, Section 1144(b)(2)(B), the deemer clause, provides that:
"[A]n employee benefit plan ... shall [not] be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."
29 U.S.C. § 1144(b)(2)(B) (1982).

regulate insurance' cannot deem an employee benefit plan to be an insurance company."

107 S.Ct. at 1552 (quoting 29 U.S.C. § 1144).

The case literature overwhelmingly supports preemption of state law claims in this setting.

In *Pilot Life*, a case close to the present one, the Court determined that the state law causes of action did "relate to" an employee benefit plan. The Court noted Congress's intention that the preemptive clause of 29 U.S.C. § 1144(a) be given a broad interpretation. The fact that the laws were not specifically designed to affect employee benefit plans and may have only indirectly regulated such plans did not save them from Section 1144(a)'s preemptive strike. 107 S.Ct. at 1553. They could, nevertheless, relate to such plans, and that is the central requirement. *See also Howard v. Parisian, Inc., supra* at 1563. In *Light v. Blue Cross and Blue Shield of Alabama*, 790 F.2d 1247 (5th Cir.1986), the Fifth Circuit reached a consistent conclusion. The *Light* court noted that, in the absence of ERISA, the state law upon which the plaintiff relied[3] would provide him with a cause of action for his injuries. Accordingly, there was "a direct connection between the state laws and the employment benefit plan." *Id.* at 1249 (quoting *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482, 487 (9th Cir. 1983), *rev'd on other grounds*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Following the guidance of *Pilot Life*, *Light*, and *Howard*, the Court concludes that Rollo's claims relate to the Maxicare–Martin–Marietta plan for purposes of the preemptive clause. His claims have one central feature: the circumstances of his medical treatment under his employer's medical services plan for employees.

Is Rollo's action saved from preemption by the operation of 29 U.S.C. § 1144(b)(2)(A)? No. Here, again, *Pilot Life* is controlling. Rollo's claims include tortious interference with the physician-pa-

tient relationship, breach of contract, intentional infliction of emotional distress, and the violation of Louisiana's Unfair and Deceptive Trade Practices Act. The saving clause deals with regulating insurance. To be saved, the state law at issue must be said to directly regulate insurance. Following the Court's opinion in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), *Pilot Life* noted that the issue of whether or not a state law regulates insurance within the meaning of the saving clause is determined by applying the standards enunciated in cases interpreting the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.* Those standards are:

> "[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry."

*Pilot Life*, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). Thus, the reach of the saving clause is a limited one.

As in *Pilot Life*, the state laws under consideration in this case do not meet up to the McCarran–Ferguson standards. Although these laws may be applied in some insurance context, and may generally have some general impact upon the business of insurance, they do not regulate insurance in the narrowing context of McCarran–Ferguson or ERISA. *See* 107 S.Ct. at 1554–55. *See also Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir.1988) (claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract and fraud preempted). Plaintiff's state law claims are not saved from the preemptive reach of ERISA's civil enforcement provisions.

Plaintiff argues that a recent Supreme Court case, *Mackey v. Lanier Collections Agency and Service, Inc.*, —— U.S. ——,

---

**3.** The *Light* plaintiff's causes of action similarly included claims for bad faith refusal to pay,

negligent and intentional infliction of emotional distress, breach of fiduciary duty, and deceit.

108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), compels a different result. In that case, the Court held that Georgia's general garnishment law was not preempted by ERISA, and that a collection agency could use the Georgia law to attach plan benefits belonging to debtors who were plan participants. *Mackey* was restrictively written (by a 5–4 Court) to apply only to suits to attach or garnish funds held by an ERISA plan. The Court noted:

"In our view ... certain ERISA provisions, and several aspects of the statute's structure, indicate that Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits. Consequently, we ... hold that federal law does not bar a garnishments action like respondent's."

*Id.* 108 S.Ct. at 2186. *Mackey* is distinguishable from the present case and the cases previously cited for added reasons, not just because of its restrictive holding. *Mackey* involved a suit by a party not related to the ERISA plan. The *Mackey* respondents were attempting to sue the fund for reasons unrelated to the plan's administrative operation.[4] In a case such as *Mackey*, Congress's intention that the admistration of ERISA plans not be complicated with state law claims is not implicated.

Rollo also seeks to avoid preemption by drawing a distinction between suits brought against parties who have a fiduciary relationship with an ERISA plan and suits brought against nonfiduciaries. In support, he relies on *Southern California Meat Cutters Unions and Food Employers Pension Trust Fund v. Investors Research Co.*, 687 F.Supp. 506 (C.D.Cal.1988). The *Meat Cutters* court held that ERISA does not preempt state law claims against parties who are not fiduciaries of ERISA plans. The court did not base its opinion on any precedent, but merely on its own statutory interpretation of ERISA's enforcement provisions. It seems like a maverick case when one considers other decisions that have spoken to the issue.

*Meat Cutters* is fundamentally at odds with impressive appellate decisions, and with the statutory scheme itself. In *Light v. Blue Cross and Blue Shield, supra,* the Fifth Circuit held that state law claims against a plan and its administrators were preempted. The Fifth Circuit made no mention of a fiduciary-nonfiduciary distinction. Furthermore, in *Howard v. Parisian, Inc., supra,* the Eleventh Circuit, relying in part upon *Light,* firmly held that:

"Section 1144(a) preempts *all* state laws insofar as they relate to employee benefit plans and is not limited to state laws as applied to plan fiduciaries.... Allowing plan beneficiaries to assert state law claims against non-fiduciary plan administrators ... would upset the uniform regulation of plan benefits intended by Congress."

807 F.2d at 1565 (emphasis in original). *Accord Brock v. Gerace,* 635 F.Supp. 563, 569 (D.N.J.1986); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 641–42 (W.D. Wis.1979).

The Court finds the circuit decisions persuasive and binding. And the statutory scheme squares with only this view. Section 1109, which deals expressly with fiduciaries, provides remedies in addition to the remedies included in Section 1132's general civil enforcement provisions. With that in mind, the Supreme Court in *Pilot Light* stated that, "A participant or beneficiary may *also* bring a cause of action for breach of fiduciary duty." 107 S.Ct. at 1556 (emphasis added).

Accordingly, for the foregoing reasons, defendants' motion to dismiss is GRANTED, and judgment will be entered accordingly.

---

**4.** The caselaw cited in *Mackey* supports this distinction. For example, at footnote 8, the Court cites *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986), which involved a suit against the plan by a doctor for defamation. The doctor alleged that the plan administrators had issued public, critical statements about him.