**William E. BROCK, Secretary of the United States Department of Labor, Plaintiff–Appellee,**

v.

**Kenneth HENDERSHOTT and Edgar Platel, Defendants–Appellants.**

**No. 87–3151.**

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 11, 1987.

Decided Feb. 24, 1988.

Kenneth Hendershott, pro se.

Edgar Platel, pro se.

Stephen Kessler, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee.

Before KEITH and WELLFORD, Circuit Judges, and HULL, Chief District Judge.*

WELLFORD, Circuit Judge.

Defendants Hendershott and Platel appeal from a summary judgment decision against them by the district court. As the matter now stands, the defendants must disgorge profits obtained through abuse of their positions as union representatives in charge of negotiating various collective bargaining agreements. For the reasons set out below, we affirm.

* The Honorable Thomas G. Hull, United States District Court for the Eastern District of Tennes-   see, sitting by designation.

## I.

In this case the Department of Labor seeks repayment of sums realized by Kenneth Hendershott and Edgar Platel, two union representatives who benefited from their locals' choice of a dental association. The facts show the two defendants set up a corporation known as ISI, which was in the business of soliciting business for a cartel of dentists, known as the "Southmoor" program. For every group contract Southmoor received, ISI received a profit.

At the time in question Hendershott was International Vice President and Area Director for the State of Ohio for the United Paperworkers International Union (UPIU). In this capacity, he was the highest ranking union official in Ohio. Hendershott used his influence over Ohio's UPIU bargaining units to demand a dental plan from their various employers and to propose Southmoor as the dental program of choice. Edgar Platel, a UPIU representative and an assistant to Hendershott, handled certain bargaining unit negotiations. Platel was a coowner of ISI and involved in the Southmoor scheme contemplating profits for ISI.

According to the government, the actions taken by Hendershott and Platel violated the fiduciary duties set out in ERISA, 29 U.S.C. § 1001 *et seq.*, because Hendershott was a fiduciary as defined under 29 U.S.C. § 1002(21) in accordance with a broad interpretation given that section. As such, Hendershott was charged with violating the absolute bar against self dealing set out in 29 U.S.C. § 1106(b)(1) by realizing a financial gain, via ISI, for every bargaining unit joining Southmoor.[1] The government asserted the money received by Platel was also subject to disgorgement, despite his nonfiduciary status, because he participated with Hendershott in his breach. The government alleged that Hendershott received $26,505.40 and Platel $29,644.03, from ISI.

The defendants appeared pro se in this case through most of the proceedings. When the government first moved for summary judgment on November 26, 1984 defendant Platel filed a response in which he asserted he was not an officer of UPIU; that he negotiated bargaining agreements as instructed by the union and not all of them resulted in a Southmoor program; that every bargaining unit was entitled to choose its own dental plan; that he was not aware that Hendershott was a fiduciary and was engaged in breaching his duties; and that he did not receive much money from ISI. In sum, Platel claimed he could not be held liable under ERISA because he was not a fiduciary, and because he did not knowingly aid Hendershott in the breach of his duties. Hendershott filed nothing in opposition. In spite of the fact that no affidavits were attached to Platel's response, the government's motion was denied and the case proceeded further.

The case then went to the final pretrial hearing on September 9, 1986. Hendershott did not appear because, as related by his letter to Judge Rubin, he could not afford the trip. The pretrial order set out the government's version of the facts, and noted Platel's various factual allegations. Finally, a pretrial order indicated summary judgment was appropriate, and gave notice that the defendants could move to modify the order or challenge the facts adopted. Neither defendant moved to challenge or modify the pretrial order and the government renewed its motion for summary judgment.

On November 4, 1986 Judge Rubin granted the government's motion against both defendants stating, "Defendant Platel indicated that he would file a response in opposition to the renewed motion for summary judgment, but he has not done so. Defendant Hendershott did not appear at the final pretrial conference. It is now accurate to say that the government's view of the facts in this case is no longer in dispute." The district court found both defendants liable, and ordered all money they had received to be disgorged. The district court took the additional step of enjoining both defendants from selling

---

1. The government also alleged his violation of § 1106(a)(1)(D) by giving ISI money to his daughter, a "party in interest" within the meaning of the section.

goods to, or acting as fiduciaries of an ERISA benefit plan for 5 years.

In response to this action both defendants filed notice of appeal and base their appeal on allegations that the circumstances of this case produce facts making summary judgment inappropriate.

## II.

■ Judicial precedent clearly bears out the liability of the defendants under the facts presented. In *Donovan v. Mercer*, 747 F.2d 304 (5th Cir.1984), the court held that anyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because that term was intended to be interpreted broadly by Congress: "Thus, 'fiduciary' should be defined not only by reference to particular titles, such as 'trustee' but also by considering the authority which a particular person has or exercises over an employee benefit plan." *Id.* at 308. The ERISA statute provides that a person is a fiduciary when he "exercises any discretionary authority or discretionary control respecting ... management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The unchallenged facts show that Hendershott wielded considerable influence over the local unions as a high-ranking UPIU representative, and used this influence to direct the locals to choose Southmoor. For example, in one instance Hendershott actually took over as bargaining representative for one bargaining unit, which was not his usual practice, for the sole purpose of pushing the Southmoor program. For every addition to the Southmoor program, Hendershott received a profit by virtue of his ownership interest in ISI. We believe these actions clearly make out a violation of § 1106(b)(1) and subject Hendershott to liability under the statute.

■ The facts produced here also show that Platel, as Hendershott's assistant, personally negotiated a number of agreements resulting in new members to the Southmoor program. Platel's duties as international union representative attached to Hendershott's office included bargaining on behalf of individual bargaining units.

Several of the collective bargaining agreements resulting from his efforts had provisions designating Southmoor as the union's choice for dental service. Platel also directly benefitted from his actions because as part owner of ISI, he received a profit every time a union local joined Southmoor.

Platel challenges this by claiming he was unaware that Hendershott was an ERISA trustee, and was therefore unaware that he was helping Hendershott breach his duties by pushing Southmoor. While it is unclear whether Platel is himself an ERISA trustee, as defined in 29 U.S.C. § 1002(2), the government argues that he is nonetheless liable.

We conclude under the circumstances that Platel may be held liable as a nontrustee for aiding and assisting Hendershott and furthering his breach of fiduciary duty. *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 642 (W.D.Wis.1979). Further, a nonfiduciary's knowledge of the breach can be inferred from surrounding circumstances raising a reasonable inference of knowledge. *Donovan v. Schmoutey*, 592 F.Supp. 1361, 1396 (D.Nev.1984); *Donovan v. Daughtery*, 550 F.Supp. 390, 410–11 (S.D.Ala.1982). The facts here bear out that Platel knew or clearly should have known Hendershott had a duty not to profit personally through use of his union influence, and that the ISI–Southmoor arrangement was prohibited self dealing in which Platel himself was heavily involved.

Thus, the facts accepted by the district court bear out the liability of both defendants and they must be held liable if the district court properly found the facts were unchallenged.

## III.

■ Our conclusion raises the question of whether either defendant, as a pro se litigant, was entitled to special solicitude in responding to the government's second motion for summary judgment. We conclude that these defendants were not entitled to special treatment.

The record shows that the defendants failed to object to the magistrate's order

adopting the government's version of the facts at issue. The argument could be made in this case that had the defendants been given assistance, they could have effectively challenged the facts presented by the government and survived a motion for summary judgment. Instead, it appears they mistakenly assumed that their earlier challenge to the government's first motion for summary judgment was sufficient to defeat the second motion without further steps being taken. Thus we are faced with the issue of whether their mistake can be excused because of the fact that Hendershott and Platel, for whatever reason, did not retain an attorney.[2]

This circuit has never directly addressed the issue of what procedural help, if any, a nonprisoner pro se defendant is entitled to receive. We are persuaded that no special assistance is required in situations such as this, based on *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir.1986). *Filler* remains the only published decision to consider this specific situation. In that case, the court declared no special treatment was to be afforded ordinary civil litigants who proceed pro se. The court reached this conclusion out of a sense of fairness to other parties who choose counsel and must bear the risk of their attorney's mistakes. Thus, a "litigant who chooses *himself* as a legal representative should be treated no differently." *Id.* at 1364–65 (emphasis in original). This approach was carefully held not to be applicable to prisoners proceeding without counsel since they often have little choice in proceeding on their own behalf. *Id.* at 1364 n. 4.

We adopt this rule in this case. When a person such as either defendant in this case chooses to represent himself, he should expect no special treatment which prefers him over others who are represented by attorneys. There was no request made for appointed counsel. The application of the law must be equal, even for those who have no attorney. *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir.

1983). Thus, there was no error committed in the district court's acceptance of the government's version of the facts. Neither defendant made any objection to the magistrate's report, although notified that they could make such objections in the magistrate's report.

## IV.

For the reasons set out above, the decision of the district court is AFFIRMED.

---

2. The record shows that the defendants' attorney withdrew because he was not being paid. Neither defendant obtained new representation, and there is no evidence that they asked for court-appointed counsel.