896 F.2d 1366
 12 Employee Benefits Ca 1180
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Willie Q. CLARK, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES STEAMSHIP TRADE ASSOCIATION, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION BENEFIT TRUST FUND,
Defendant-Appellee,
Board of Trustees Steamship Trade Association, International
Longshoremen's Association Pension Trust Fund, Defendant.
 No. 89-1431.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 4, 1989.
Decided: Feb. 14, 1990.
 
 David N. Kuryk, for appellant.
 Christine Ann Williams (Anthony A. Abato, Abato, Rubenstein & Abato, on brief), for appellee.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 In this case we must determine whether the board of trustees of an employee welfare benefit plan violated its fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1101 et seq., by sustaining an employee's change of beneficiaries for a life insurance policy in favor of a field representative of the benefit plan when the field representative aided the employee in making the change. The district court held that the board of trustees did not violate its fiduciary duties.
 
 
 2
 We affirm.
 
 I.
 
 3
 George Walker, a retired longshoreman, was a participant in the Steamship Trade Association of Baltimore, Inc.--International Longshoremen's Association (AFL-CIO) Benefits Trust Fund (hereinafter referred to as "the fund" or "the plan"). The fund is an employee welfare benefit plan governed by ERISA. Among the benefits provided Walker under the plan was $50,000 in life insurance.
 
 
 4
 In 1983, Walker changed the beneficiary of his life insurance, naming appellant Willie Clark, his niece, as the new beneficiary. James Caldwell, a field representative of the plan and a long-time friend of Walker's, assisted him in effecting the change.
 
 
 5
 On October 21, 1986, Walker again changed the beneficiaries of his insurance, adding Caldwell and Benjamin Griffin, another long-time friend, as beneficiaries along with Clark. At the time of this change, Walker was hospitalized with various physical ailments. Walker had long relied on Caldwell and Griffin to handle financial matters for him, and he shared joint bank accounts with each of them. In this instance, Caldwell again assisted Walker in effecting the change in beneficiaries, even though he himself was being added as a beneficiary. Caldwell obtained the necessary form for Walker, typed the information onto the form, took it to Walker to sign, and returned the form to the plan office, where it was witnessed by the executive secretary of the fund, Deborah Lewis, and processed. This process departed from standard operating procedure only in that Lewis witnessed the form without actually having seen Walker sign it. No ERISA provision expressly prohibited a field representative such as Caldwell from being named as a beneficiary or from assisting in a change of beneficiaries in his own favor.
 
 
 6
 At approximately this same time, Walker also executed a will leaving legacies of $5,000 each to Clark and Walker's two sisters, and legacies of $10,000 each to Caldwell and Griffin. Caldwell was also named residuary legatee and personal representative. Caldwell assisted in the preparation of the will, which was witnessed by two of Walker's neighbors.
 
 
 7
 When Walker died on December 20, 1986, Clark, Caldwell, and Griffin all filed claims with the plan for their shares of the life insurance benefits. Each was paid a one-third share. Clark then claimed entitlement to the full amount and demanded that she be paid accordingly.
 
 
 8
 The board of trustees of the benefit plan reviewed and investigated Clark's claim. It sought the advice of counsel and authorized counsel to retain a private firm, Baltimore Security Systems, to investigate the matter. After considering the matter at four separate meetings, the board made no change in the dispensation of benefits.
 
 
 9
 Clark filed suit against the board of trustees in federal district court, asserting violation of the fiduciary duties imposed by 29 U.S.C. Sec. 1104 and seeking recovery of benefits under an ERISA plan under 29 U.S.C. Sec. 1132(a)(1)(B). The case was tried by the district court sitting without a jury. The court held that the board of trustees did not violate its fiduciary duties and affirmed the board's decision to uphold the disbursements to Caldwell and Griffin. Clark appeals.
 
 II.
 
 10
 Clark maintains that the board of trustees violated its fiduciary duties of care and loyalty under 29 U.S.C. Sec. 1104 by refusing to award her the entire amount of the life insurance proceeds. In addition, she argues that Caldwell was a fiduciary and violated his fiduciary duties, and that the board should be held liable under a theory of respondent superior.
 
 
 11
 Clark's arguments are without merit. Although the board of trustees is a fiduciary under ERISA, 29 U.S.C. Sec. 1002(21)(A), there is no evidence that the board violated its fiduciary duties. ERISA imposes on fiduciaries general duties of loyalty and care. 29 U.S.C. Sec. 1104.[1] The board of trustees fulfilled these duties in this case. Although no provision of the ERISA statute prohibits a field representative from assisting in a change of beneficiaries from which he is to benefit, the board nonetheless investigated the charges of wrongdoing on the part of Caldwell. It consulted counsel on the matter and hired an outside investigating firm. It then considered the matter at several of its meetings. The only deviation from standard operating procedure in effecting the change of beneficiaries was Ms. Lewis' witnessing of the change of beneficiary form without having observed Walker sign it. That the board decided to sustain Walker's change of beneficiaries in the face of this deviation does not by itself indicate that the board violated its fiduciary duties.
 
 
 12
 In fact, had the board invalidated the change of beneficiaries because of this deviation or because of Caldwell's involvement, it might then have violated its fiduciary duty "to act solely in the interest of the participants and beneficiaries," 29 U.S.C. Sec. 1104(a)(1), by thwarting Walker's intent to change beneficiaries. The trial court's findings of fact make clear that Caldwell and Griffin were close friends of Walker. Caldwell managed for Walker his bank accounts and other financial matters. Both Caldwell and Griffin shared joint bank accounts with rights of survivorship with Walker, and both were beneficiaries of Walker's will. Given such evidence, the board acted lawfully in honoring Walker's change of beneficiaries.
 
 
 13
 Nor can Clark successfully argue that the board of trustees is liable under a theory of respondeat superior. ERISA defines the term "fiduciary" as follows:
 
 
 14
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....
 
 
 15
 29 U.S.C. Sec. 1002(21)(a). The district court found as a matter of fact that in the performance of his duties as a field representative Caldwell exercised no discretionary authority over the management or administration of the plan. Rather, his duties consisted of such ministerial tasks as handling claim inquiries, interviewing prospective and current plan participants, preparing pension applications, and forwarding member and pension changes to the claims department and pension clerk for record updating and maintenance. As there is no evidence that Caldwell exercised any discretionary authority, the district court was clearly correct in finding that Caldwell was not a fiduciary. See Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir.1988); Donovan v. Mercer, 747 F.2d 304, 308-09 (5th Cir.1984). Since Caldwell was not a fiduciary, the board of trustees obviously cannot be held liable on a theory of respondeat superior.
 
 
 16
 Moreover, even if the board of trustees had somehow breached its fiduciary duties, Clark still would not be entitled to recover. The statutory provision that establishes liability for a breach of fiduciary duties indicates that the only entity entitled to recover for such a breach is the plan itself. 29 U.S.C. Sec. 1109; see also Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) ("[T]he entire text of Sec. [1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). Thus, even if the board had somehow violated its fiduciary duties, it would be the plan, and not Clark, that would be entitled to recover.
 
 III.
 
 17
 Clark contends that she was entitled to the proceeds of Walker's life insurance policy under 29 U.S.C. Sec. 1132(a)(1)(B). This section provides only that a beneficiary is entitled to bring suit to recover benefits due under the plan. Clark argues, however, that principles of trust law are here imported into ERISA and that she must be awarded the policy proceeds if there was improper execution of the change of beneficiary form or undue influence on the part of Caldwell in persuading Walker to make the change in beneficiaries. We disagree.
 
 
 18
 First, there is little doubt that the state law causes of action for improper execution of a change of beneficiaries and undue influence are preempted by ERISA. ERISA contains an extremely broad preemption provision preempting "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. Sec. 1144(a); see also Pilot Life Ins. Co. v. Dedeaux, 107 S.Ct. 1549, 1553 (1987). Numerous cases in the federal courts have held state law claims to be preempted by ERISA, including cases involving state testamentary law, see MacLean v. Ford Motor Co., 831 F.2d 723, 727 (7th Cir.1987), and intentional interference with contract, see Trogner v. New York Life Ins. Co., 633 F.Supp. 503, 507 (D.Md.1986). We think it plain that state law claims of improper execution and undue influence are preempted here.
 
 
 19
 Second, while it is true that principles of trust law are sometimes applicable in developing the "common law" of ERISA, we do not think that this means that a cause of action exists under ERISA for any violation of state trust law. The Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 109 S.Ct. 948, 954 (1989), stated that "ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. Sec. 1101-1114, 'codif[y] and make[ ] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts' " (emphasis added). It did not, however, indicate that it was importing into ERISA all of the common law of trusts. Bruch stands for the proposition that trust law should be looked to as a source of guidance where a matter is not specifically addressed by the statute. Since ERISA imposes specific duties on those who administer trust funds, 29 U.S.C. Sec. 1104, only those duties and not ones from other bodies of law should be looked to in determining an administrator's duties.[2]
 
 
 20
 This is not to say, of course, that the trust law principle of undue influence is irrelevant under ERISA or under our consideration of this case. If the board of trustees had declined to investigate the charge of undue influence against Caldwell, it certainly would have violated its fiduciary duties. Such is not the case here, however. The board thoroughly investigated the charge of wrongdoing, even hiring an outside investigation firm to pursue the matter. At the conclusion of the investigation, the board upheld the dispensation of benefits. The factual findings of the district court sustain the board's decision. Thus the board's decision not to invalidate the change of beneficiaries, reached after reviewing the charge of undue influence, was not in violation of its fiduciary duties.
 
 IV.
 
 21
 Finally, Clark complains that the magistrate supervising discovery did not allow her access to the report prepared for the board of trustees by the outside private investigation firm, Baltimore Security Systems. The board refused discovery on the ground that the material was prepared in anticipation of litigation and therefore was non-discoverable work-product. The dispute was referred to the magistrate who refused to compel discovery. At trial, the board referred to the report as an indication that it had conscientiously investigated Clark's claims. The report was never entered into evidence, however. In its opinion, the district court also referred to the report as evidence of the board's careful decisionmaking process. Clark argues that since the board used the report in reaching its decision, since references were made to the report at trial, and since the district court referred to the report in affirming the board, she was entitled to discovery of its contents.
 
 
 22
 We reject Clark's contention. The magistrate ruled that the report was privileged work-product. Such material prepared in anticipation of litigation is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." Fed.R.Civ.P. 26(b)(3). The magistrate found that Clark did not meet this burden since all the individuals who had been interviewed by the investigators were available locally and were subject to subpoena. In addition, Clark was able to call as a witness the president of Baltimore Security Systems who testified as to the content of the statements made by individuals who had been interviewed. Moreover, the only use of the report at trial consisted of general references to the report's preparation to demonstrate that the board had taken seriously its obligation to review Clark's claims. Given these circumstances, we are unable to hold that the magistrate abused his discretion in disallowing discovery of the report. See In re Int'l Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1240-41 (5th Cir.1982).
 
 V.
 
 23
 For the foregoing reasons, the judgment of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C. Sec. 1104 provides, in pertinent part:
 (a)(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....
 
 
 [2]
 Clark places great weight on the fact that the district court reviewed the decision of the board of trustees under an arbitrary and capricious standard rather than under a de novo standard. We recognize that, under the Supreme Court's recent decision in Bruch, "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 109 S.Ct. at 956. An inquiry into whether the benefit plan gives the board of trustees such discretionary authority is not necessary in this case, however, since under either standard of review Clark has failed to demonstrate that the board's decision to honor the change of beneficiaries was wrongful