Elizabeth DOLE, Secretary of the United States Department of Labor

v.

Fred COMPTON, Joseph McHugh, John Neilson, Frederick Hammerschmidt, Gersil N. Kay, Electrical Mechanics Association, the Fidelity–Philadelphia Trust Company, and the International Brotherhood of Electrical Workers, Local 98.

Civ. A. No. 88–7920.

United States District Court, E.D. Pennsylvania.

Dec. 6, 1990.

Brenda J. Stovall, U.S. Dept. of Labor, Office of Sol., Plan Benefits Sec. Div., Washington, D.C., Marshall Harris, Regional Sol., Office of Sol., U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Harry R. Blackburn, Blackburn Michelman & Tyndall, P.C., Laurance E. Baccini, Kathleen M. Gregor, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

Richard B. Sigmond, Sagot, Jennings & Sigmond, Richard C. McNeill, Philadelphia, Pa., for Electrical Mechanics Ass'n Intern. Broth. of Elec. Workers, Local 98.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This matter comes before us on defendants' motion to dismiss plaintiff's complaint. The plaintiff, the Secretary[1] of the United States Department of Labor, has brought the captioned action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against trustees of the International Brotherhood of Electrical Workers Union No. 98 Pension Plan (the "Local 98 Plan"), the International Brotherhood of Electrical Workers Local 98 ("Local 98"), and the Electrical Mechanics Association ("EMA"). According to the allegations in the complaint, Local 98 is an employee organization whose members are covered by the Local 98 Plan and, thus, a party in interest to the Local 98 Plan within the meaning of ERISA, 29 U.S.C. § 1002(14)(D).[2] EMA is alleged to be a not-for-profit corporation controlled by Local 98 and established by it to train and to assist its members in obtaining jobs. The Secretary alleges that EMA was merely "a shell corporation wholly controlled by Local 98 and that all transactions with EMA were, in fact, transactions with Local 98." (Complaint, ¶ 8).

According to the Secretary's complaint, on January 4, 1972 the Local 98 Plan made a thirty-year loan to EMA for $800,000.00 at 7½% interest. This loan was intended to finance construction of a building located at 1714–19 Spring Garden Street, Philadelphia, Pennsylvania. This loan was secured by a mortgage on the property. EMA held legal title to the building and in turn rented the building to Local 98.

ERISA was enacted into law in 1974. As a result of the passage of this legislation, the Local 98 Plan loan to EMA became a prohibited transaction under the provisions of 29 U.S.C. § 1106(a)(1)(A), (B) and (D)[3]

---

1. Under Fed.R.Civ.P. 25(d), when a public officer who is a party to an action in an official capacity resigns, the officer's successor is automatically substituted as a party and the action continues. Ann McLaughlin, the original plaintiff in this action, resigned as Secretary of Labor, effective January 20, 1989. Elizabeth Dole was sworn in as Secretary of Labor on January 30, 1989. Secretary Dole has since announced her resignation effective November 23, 1990. To date, no successor has been announced. In the absence of any appointment and confirmation of a successor, whoever becomes the acting public officer will be automatically substituted in the continuing action. *City of New York v. Ruckelshaus,* 358 F.Supp. 669 (D.D.C.1973), *aff'd,* 494 F.2d 1033 (D.C.Cir.1974), *aff'd,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975).

2. 29 U.S.C.A. § 1002(14)(D) (West Supp.1990) reads:

(14) The term 'party in interest' means, as to an employee benefit plan—

. . . .

(D) an employee organization any of whose members are covered by such plan;

. . . .

3. 29 U.S.C.A. § 1106(a)(1)(A), (B) and (D) (West 1985):

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

and also under 29 U.S.C. § 1106(b)(1) and (2).[1] Nevertheless, the Local 98 Plan loan was exempted from application of these provisions until June 30, 1984 by ERISA's transitional rule found at 29 U.S.C. § 1114(c)(1).[5] At the end of this transitional period, however, this loan was still outstanding and remained so until April 25, 1985, when the outstanding principal balance of the loan was $653,817.47. On that date, the defendant trustees of the Local 98 Plan sold the note to EMA for $380,289.93 and released the mortgage on the Spring Garden property. EMA is alleged to have purchased the mortgage with funds provided by Local 98.

The complaint alleges that the failure of the defendant trustees of the Local 98 Plan fully to collect on the loan to EMA prior to July 1, 1984 (the end of the transitional rule period) and the continued holding of the loan after July 1, 1984 constituted a breach of their fiduciary duties since it amounted to a violation of 29 U.S.C. § 1106(a)(1)(B) and (D) and the sale of the note on April 25, 1985 to EMA likewise breached their fiduciary duties since this transaction constituted a violation of 29 U.S.C. § 1106(a)(1)(A) and (D). The complaint seeks relief not only against the trustees of the Local 98 Plan, but also against Local 98 as a party in interest which engaged in a prohibited transaction and, in addition, against EMA as a knowing participant in a breach of fiduciary duty. The complaint seeks, *inter alia*, an order requiring Local 98 and EMA to correct the prohibited transaction by restoring to the Local 98 Plan the unpaid balance of the loan with interest.

Defendants Local 98 and EMA have moved to dismiss the complaint on the following grounds: (1) that the complaint fails to state a claim against Local 98 and EMA upon which relief can be granted in that no liability can attach to them because they are not fiduciaries of the Local 98 Plan; (2) that the complaint violates the Taking Clause of the Fifth Amendment, because the result it seeks constitutes the taking of private property for public use without just compensation; and (3) that the complaint seeks a result which is unconstitutional under the Due Process Clause of the Fifth Amendment because it imposes retroactive liability on Local 98 and EMA and is not justified by a rational legislative purpose. For the reasons expressed below, we find no merit in these arguments and we deny the defendants' motion to dismiss the complaint.

I.  *Status of EMA and Local 98 as Defendants in this Action Under ERISA*

■ Defendants EMA and Local 98 contend that because EMA and Local 98 are not alleged to be fiduciaries under ERISA, they cannot be held liable in an action under that statute. The defendants argue that the Supreme Court decision in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), necessitates a narrow

---

    ....
    (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or
    ....

**4.** 29 U.S.C.A. § 1106(b)(1) and (2) (West 1985) read:
    A fiduciary with respect to a plan shall not—
    (1) deal with the assets of the plan in his own interest or for his own account,
    (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
    ....

**5.** 29 U.S.C.A. § 1114(c)(1) (West 1985) reads:

    (c) Section 1106 and 1107(a) of this title (relating to prohibited transactions) shall not apply—
    (1) until June 30, 1984, to a loan of money or other extension of credit between a plan and a party in interest under a binding contract in effect on July 1, 1974 (or pursuant to renewals of such a contract), if such loan or other extension of credit remains at least as favorable to the plan as an arm's-length transaction with an unrelated party would be, and if the execution of the contract, the making of the loan, or the extension of credit was not, at the time of such execution, making, or extension, a prohibited transaction (within the meaning of section 503(b) of Title 26 or the corresponding provisions of prior law);
    ....

reading of the liability that can be imposed under ERISA. The defendants maintain that, since they are not "fiduciaries" as defined by the statute, they cannot be held liable in any action brought under ERISA. *Russell,* they argue, stands for the proposition that ERISA is a carefully drawn, " 'comprehensive and reticulated statute' ", *Russell,* 473 U.S. at 146, 105 S.Ct. at 3092 (*quoting Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980)). They note that the Supreme Court stated, in *Russell:* "The six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132(a) ] of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* 473 U.S. at 146, 105 S.Ct. at 3092 (emphasis in original). Since ERISA does not expressly provide for nonfiduciary liability, the defendants argue, ERISA cannot provide a cause of action against them.

The defendants also cite to a Ninth Circuit case in support of their position. *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988) held that ERISA does not provide a cause of action against non-fiduciaries who participate in a breach of trust with a fiduciary. The court in *Nieto* based its decision upon

29 U.S.C. § 1109(a) [6] which speaks only of the personal liability of a "fiduciary" for any breach of fiduciary duty. The court concluded that, if Congress had wished to include non-fiduciaries in the liability imposed by ERISA, it would have done so explicitly. It also rejected interpreting § 1132(a)(3) [7] so as to provide causes of action against non-fiduciaries, since to do so would render § 1109 superfluous, "a result contrary to the fundamental canons of statutory construction." *Id.* at 873.

The Third Circuit has not yet expressly addressed the issue of the liability of a non-fiduciary who knowingly participates in a breach of trust with a fiduciary. In *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146 (3d Cir.1989), the issue before the court was this: whether an independent accounting firm, which had done nothing more than perform an audit required by statute, was a "fiduciary" who could be held liable under 29 U.S.C. § 1109(a). The Third Circuit found that the independent accounting firm was not a "fiduciary" as defined by ERISA and it, therefore, could not be held liable under § 1109(a). In a footnote, the Third Circuit also disposed of the appellants' argument that they had an express cause of action against the independent accounting firm

---

6. 29 U.S.C.A. § 1109(a) (West 1985) states:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

7. 29 U.S.C.A. § 1132(a) (West 1985 & Supp. 1990) reads, in full, as follows:

(a) A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the Secretary to collect any civil penalty under subsection (c)(2) or (i) or (1) of this section.

(Price Waterhouse) under 29 U.S.C. § 1132(a)(3). The Third Circuit stated:

The short answer to this is that section 1132(a)(3) is limited by its terms to suits seeking *equitable* relief. *See Northeast Dept. ILGWU Welfare Fund v. Teamsters Local Un. No. 229*, 764 F.2d 147, 152–153 (3d Cir.1985) ("we believe that [a prior decision of this court] implicitly adopted the view that § 1132 must be read *narrowly and literally*." (emphasis added)). Appellants, however, rely on Justice Brennan's concurrence in *Russell*, 473 U.S. at 157–158, 105 S.Ct. at 3098, for the proposition that section 1132(a)(3) incorporates the general law of trusts, which allows monetary damages as part of equitable relief. Since we have held that Price Waterhouse is not a fiduciary under ERISA, however, it cannot be held liable on a trust-law theory. Moreover, allowing appellants' suit under section 1132(a)(3) would render section 1109(a) superfluous, and would thus violate a fundamental principle of statutory construction. *Nieto*, 845 F.2d at 873.

*Id.* at 1151 n. 6.

It would appear, from this footnote, that the Third Circuit would reject a cause of action derived from 29 U.S.C. § 1132(a)(3) against an entity which did not fit the definition of a "fiduciary" under ERISA. In *Price Waterhouse*, however, the Third Circuit had no occasion to consider the liability, under 29 U.S.C. § 1132(a), of a non-fiduciary who had knowingly participated with a fiduciary in that fiduciary's breach of trust. Moreover, the Third Circuit, in another footnote later in the *Price Waterhouse* opinion, said:

Appellants also argue that Price Waterhouse is liable under ERISA as a participant in Capri's breach of its fiduciary duty. We find this argument without merit. Appellants do not allege in their complaint that Price Waterhouse in any way either participated in or facilitated Capri's alleged breach of its duty. Appellants merely allege that Price Waterhouse knew or should have known of Capri's breach of its fiduciary duty and did not bring it to the attention of the trustees. We have been referred to no authority which would support the proposition that this, without more, would constitute culpable participation in a breach of trust under ERISA.

*Id.* at 1153 n. 9.

Thus, the issue which confronts us in the case at bar has not yet been presented to the appellate court for decision and we must look elsewhere for guidance.

In the trial court opinion in *Painters of Philadelphia District Counsel No. 21 Welfare Fund v. Price Waterhouse*, 699 F.Supp. 1100 (E.D.Pa.1988), *aff'd*, 879 F.2d 1146 (3d Cir.1989), the District Court did not find Price Waterhouse a "fiduciary" subject to liability under ERISA. In a footnote, however, the District Court stated:

The one situation in which courts have imposed ERISA fiduciary status on a party not otherwise meeting the definition of fiduciary in 29 U.S.C.A. § 1002(21) is when a non-fiduciary knowingly colludes with a fiduciary to impair a fund's assets. *See, e.g., Donovan v. Bryans*, 566 F.Supp. 1258 (E.D.Pa.1983). Plaintiffs make no such allegation against Price Waterhouse in the present case.

*Id.* at 1102 n. 4.

Indeed, in addition to *Bryans*, 566 F.Supp. 1258, cited above, two other District Court cases within the Third Circuit have also concluded that liability under ERISA may be imposed upon non-fiduciaries who knowingly participate with a fiduciary in a breach of trust. They are: *Pension Fund Local 701 v. Omni Funding Group*, 731 F.Supp. 161 (D.N.J.1990) and *Brock v. Gerace*, 635 F.Supp. 563 (D.N.J. 1986).

As noted in *Omni Funding Group*, 731 F.Supp. at 177, most circuit courts that have considered the availability of an action under ERISA against a non-fiduciary have found in favor of the existence of such an action: *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220–21 (2d Cir.1987); *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 958 (D.C.Cir.1985) (dicta); *Thornton v. Evans*, 692 F.2d 1064, 1078 (7th Cir.1982) (same).

Of course, as we have noted, *Nieto v. Ecker*, 845 F.2d 868, 871–73 (9th Cir.1988), holds that no cause of action against non-fiduciaries exists under ERISA.

In all three cases, *Bryans, Gerace,* and *Omni Funding Group,* the court looked to the legislative history of ERISA and found a Congressional intent to afford the Secretary of Labor and plan participants and beneficiaries broad remedies to redress or to prevent violations of Title I of ERISA. These cases also looked to the language of the statute itself at 29 U.S.C. § 1132(a)(3) or (5) for the authority to remedy ERISA violations. Most recently, the District Court in *Omni Funding Group,* 731 F.Supp. 161 stated:

> ERISA is a comprehensive remedial statute designed to protect the interests of participants and beneficiaries of employee benefit plans. *Eaves v. Penn,* 587 F.2d 453, 457 (10th Cir.1978); *Brock v. Gerace,* 635 F.Supp. at 566. Accordingly, ERISA should be liberally construed in order to carry out its remedial purposes. *Donovan v. Mazzola,* 716 F.2d 1226, 1235 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Brock v. Gerace,* 635 F.Supp. at 566. ERISA's broad remedial provisions as codified in § 1132, as well as the statute's legislative history, suggest strongly that Congress intended ERISA to federalize the common law of trusts. It is undisputed that under the common law of trusts, a beneficiary may seek relief from a non-fiduciary acting in concert with a fiduciary. *See* Restatement (Second) of Trusts at § 326 (1959)....

*Id.* at 178 (footnote omitted).

■ We are inclined to recognize a cause of action under ERISA against a non-fiduciary who knowingly participates in a breach of trust with a fiduciary. We do not believe that the Supreme Court's decision in *Russell,* 473 U.S. 134, 105 S.Ct. 3085, in any way hampers this conclusion. In *Russell,* the Supreme Court applied the four-factor test developed in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) to decide whether a cause of action would be implied under ERISA for extracontractual damages sought by a beneficiary of an employee benefit plan. The Supreme Court in *Russell* refused to find such a cause of action. "Specifically, the Court found that 'the voluminous legislative history' of ERISA contradicted any assertion of an implied cause of action for extracontractual damages. *Id.* [473 U.S.] at 145, 105 S.Ct. at 3092." *Omni Funding Group,* 731 F.Supp. at 178. In the instant situation, however, legislative history indicates an intent on the part of Congress that the enforcement provisions of ERISA should reflect traditional principles of trust law. *McDougall v. Donovan,* 539 F.Supp. 596, 598 (N.D.Ill.1982).

We recognize that the court in *Nieto,* 845 F.2d 868, refused to impose ERISA liability on a non-fiduciary who has participated in a breach of trust by a fiduciary. We find ourselves, however, more inclined to adopt the reasoning of cases within our own circuit, as well as that of the other circuits we have referred to.

We believe that references in ERISA's legislative history indicates a Congressional intent to provide broad legal and equitable remedies under ERISA [8] and to look to the common law of trusts.[9] We, there-

---

8. "The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Retirement Income Security for Employees Act as well as the amendments made to the Welfare and Pension Plans Disclosure Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to partici-

pants." S.Rep. No. 127, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4871.

9. Senator Harrison B. Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare, stated: "[T]he legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets. The objectives of these provisions are to make applicable the law of trusts; to prohibit exculpatory clauses that have often been used in this field; to establish uni-

fore, hold that Local 98 [10] and EMA may be sued under ERISA in the case at bar.[11]

## II. The Relief Sought by the Secretary and the Taking Clause of the Fifth Amendment to the United States Constitution

■ The Fifth Amendment to the United States Constitution reads, in pertinent part: "[N]or shall private property be taken for public use, without just compensation." The defendants argue that the relief sought by the Secretary amounts to an unconstitutional taking of private property. If the relief requested by the Secretary is granted, *i.e.*, the restoration of the unpaid balance of the loan, plus interest, the defendants will be required by the Govern-

ment to pay this money to the Local 98 Plan at a date earlier than the one originally specified under the note and mortgage. (The original terms of the 1972 loan for $800,000.00 called for a term of thirty years and an interest rate of 7½%). The Supreme Court stated in *Connolly v. Pension Benefit Guarantee Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986):

> If the regulatory statute is otherwise within the powers of Congress, ..., its application may not be defeated by private contractual provisions. For the same reason, the fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking. *Bowles v. Willingham*, 321 U.S. 503, 517, 64

form fiduciary standards to prevent transactions which dissipate or endanger plan assets, and to provide effective remedies for breaches of trust." 1974 U.S.Code Cong. & Admin.News 5186, 93d Cong.2d Sess., 1974. Also: "The principles of fiduciary conduct are adopted from existing trust law, but with modifications appropriate for employee benefit plans." H.R.Rep. No. 533, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4651. For additional reference to the adoption of principles from existing trust law, *see* S.Rep. No. 127, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4866.

10. Local 98 is a "party in interest", as that term is defined by ERISA at 29 U.S.C. § 1002(14)(D). We note that some courts have recognized that a party in interest may be held liable under ERISA for participating in a prohibited transaction. *Nieto*, 845 F.2d at 873–874; *McDougall*, 539 F.Supp. 596. *Gerace*, 635 F.Supp. at 567, cited *McDougall* with approval in its quest for a resolution of the issue of whether ERISA liability can be imposed upon a non-fiduciary who participates in a fiduciary's breach of trust.

The Internal Revenue Code, 26 U.S.C. § 4975, also imposes a tax upon disqualified persons who participate in prohibited transactions. 26 U.S.C. § 4975 is a part of Title II of ERISA, the so-called "tax title". *McDougall*, 539 F.Supp. at 599. A "disqualified person", as defined at 26 U.S.C. § 4975(e)(2)(D), is the same as a "party in interest", as defined by 29 U.S.C. § 1002(14)(D), *i.e.*, "an employee organization any of whose members are covered by the plan." 26 U.S.C.A. § 4975(h) (West 1989) also reads: "Before sending a notice of deficiency with respect to the tax imposed by subsection (a) or (b), the Secretary shall notify the Secretary of Labor and provide him a reasonable opportunity to obtain a correction of the prohibited transaction or to com-

ment on the imposition of such tax." "[T]itle III of ERISA makes clear that the powers granted to the Department of Labor in Title I and to the Internal Revenue Service in Title II are not mutually exclusive." *McDougall*, 539 F.Supp. at 599. The structure of ERISA would, thus, tend to support a finding that the Secretary of Labor has the right to seek restitution from a non-fiduciary party in interest. *Id.*

From the case law which has considered the issue and from the Internal Revenue Code sections which we have quoted above, it would appear that a party in interest, as well as a fiduciary, may be found liable under ERISA for participation in a prohibited transaction. We, therefore, believe that there is persuasive authority that Local 98, as a party in interest who has allegedly participated with the Local 98 Plan trustees in a prohibited transaction, could be held liable in the instant case on this basis as well.

11. As we have quoted above, the Third Circuit, in *Price Waterhouse*, 879 F.2d at 1151 n. 6, did cite to *Nieto*, when it stated: "Moreover, allowing appellants' suit under section 1132(a)(3) would render section 1109(a) superfluous, and would thus violate a fundamental principle of statutory construction. *Nieto*, 845 F.2d at 873." It is true that *Nieto* holds that no cause of action exists under ERISA against a non-fiduciary who participates in a breach of trust by fiduciaries. It is also true that, in support of this holding, the *Nieto* court stated: "Permitting recovery of damages under section 502(a)(3) would render section 409(a) superfluous, a result contrary to a fundamental canon of statutory construction." *Id.* at 873. We do not believe, however, that the Third Circuit, in appropriating this principle from *Nieto*, was endorsing the *Nieto* court's holding on the issue of non-fiduciary liability for participation in a fiduciary's breach of trust. No such issue was before the Third Circuit in *Price Waterhouse*.

S.Ct. 641, 648, 88 L.Ed. 892 (1944); *Omnia Commercial Co. v. United States*, 261 U.S. 502, 508–510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923)....

*Id.* 475 U.S. at 224, 106 S.Ct. at 1025.

In *Connolly*, the Supreme Court acknowledged that there was no set formula for determining what does constitute a "taking" under the Fifth Amendment. It did, however, set forth three factors which have "particular significance". They are: "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action'." *Id.* 475 U.S. at 225, 106 S.Ct. at 1026 (*quoting Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)).

We believe that none of these factors leads to the conclusion that the Secretary's action constitutes a "taking" under the Fifth Amendment. The defendants argue that the relief sought will indeed have an economic impact. They contend that the Local 98 Plan has "presumably" reinvested the proceeds of the sale of the note back to EMA at a current market rate of interest so that the return to the Local 98 Plan on the reinvested proceeds will net the same long-term gain as the original loan to EMA. They argue that imposing the liability sought by the Secretary upon Local 98 would require its members to reach into their pockets to restore funds to the Local 98 Plan which the Local 98 Plan never lost. To this argument we reply that "presumptions" about the Local 98 Plan's disposition of the proceeds of the sale of the note cannot be expected to convince this court of the allegedly unjust "windfall" effect that the Secretary's action would supposedly have.

It is also important to remember that ERISA allowed a ten-year period for the correction of prohibited transactions. This should be a long enough period of time in which to deal with any prospective economic impact or possible interference with investment-backed expectations. For example, sometime during this period, Local 98 and EMA could have obtained a loan from a third-party at substantially the same terms.

When we turn to the character of the governmental action, we note that the Government is not taking property for its own use. Instead, it is seeking to undo the effects of a transaction prohibited by a statute designed to safeguard the security of the American retirement system. ERISA represents the culmination of a decade of legislative effort. It is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Before ERISA was enacted, Congress had found that employee benefit plans constituted a ready source of cash upon which pension plan sponsors could draw for their own purposes rather than secure retirement and other benefits for the workers. *See* Introductory Remarks of Mr. Ribicoff, 1 *Legislative History of the Employee Retirement Income Security Act of 1974*, at 208 (1976). To prevent these abuses and to further the "soundness and stability" of pension plans, 29 U.S.C.A. § 1001(a) (West 1985), Congress passed ERISA for the purpose of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.A. § 1001(b) (West 1985). We believe that the character of the governmental action is a reasonable and salutary one in that it aims to protect the financial integrity of a plan upon which the workers depend to fund their present and future pension benefits.

Under the criteria set forth in *Connolly*, 475 U.S. at 212, 106 S.Ct. at 1019, we cannot find that the relief sought by the Secretary amounts to an unconstitutional taking of private property.

III. *The Relief Sought By the Secretary and the Due Process Clause of the Fifth Amendment to the United States Constitution*

The defendants further challenge the Secretary's action on the basis of the

Due Process Clause of the Fifth Amendment, which reads: "No person shall be ... deprived of life, liberty or property, without due process of law;...." The defendants argue that, in seeking payment of the unpaid balance of the 1972 loan, this ERISA action imposes a retroactive liability which violates due process. We do not agree with the defendants on this issue for the reasons we now set forth below.

■ There is a presumption of constitutionality regarding legislative acts which adjust the burdens and benefits of economic life. The party who complains of a due process violation bears the burden of establishing that the legislature acted in an arbitrary and irrational way. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1975); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). The Supreme Court has said:

> [L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. See *Fleming v. Rhodes*, 331 U.S. 100[, 67 S.Ct. 1140, 91 L.Ed. 1368] (1947); *Carpenter v. Wabash R. Co.*, 309 U.S. 23[, 60 S.Ct. 416, 84 L.Ed. 558] (1940); *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240[, 55 S.Ct. 407, 79 L.Ed. 885] (1935); *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398[, 54 S.Ct. 231, 78 L.Ed. 413] (1934); *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467[, 31 S.Ct. 265, 55 L.Ed. 297] (1911). This is true even though the effect of the legislation is to impose a new duty or liability based on past acts. See *Lichter v. United States*, 334 U.S. 742[, 68 S.Ct. 1294, 92 L.Ed. 1694] (1948); *Welch v. Henry*, 305 U.S. 134[, 59 S.Ct. 121, 83 L.Ed. 87] (1938); *Funkhouser v. Preston Co.*, 290 U.S. 163[, 54 S.Ct. 134, 78 L.Ed. 243] (1933).

*Usery*, 428 U.S. at 16, 96 S.Ct. at 2893.

The Supreme Court recognized that retroactive legislation had a heavier burden than legislation with only future effects, but "that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *R.A. Gray & Co.*, 467 U.S. at 730, 104 S.Ct. at 2718.

The ERISA violation in the instant case occurred when the loan was maintained after the expiration of the ten-year transitional period and then sold to EMA for significantly less than its face value.[12] Whatever retroactive effect might exist is

12. The defendants argue that it is arbitrary and capricious for the Secretary to fail to take action against the loan during this ten-year transitional period and that such silence constituted a tacit approval of the loan. The defendants are incorrect. The exemption found at 29 U.S.C. § 1114(c)(1) applies only if the prohibited loan resembled an arms-length transaction with an unrelated party. Nonetheless, even such a loan had to be disposed of by June 30, 1984, when 29 U.S.C. § 1106 started to apply. Therefore, the Secretary could not take action during this ten-year period because the ERISA violation did not take place until the Local 98 Plan continued holding on to the note and ultimately sold it for less than face value.

The defendants also rely upon *Railroad Retirement Board v. Alton Railroad Co.*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935), in which the Supreme Court had found that the Railroad Retirement Act of 1934 violated the Due Process Clause of the Fifth Amendment by requiring railroads to create pension funds which were to include not only all current employees, but also those employees who had been employed during the year prior to enactment of this legislation. The Supreme Court had faulted this provision because, *inter alia*, "it resurrects for new burdens transactions long since past and closed...." *Id.* 295 U.S. at 350, 55 S.Ct. at 762.

We note that the continued vitality of *Alton Railroad Co.* has been questioned by recent Supreme Court decisions. Said the court in *R.A. Gray & Co.*, 467 U.S. at 733, 104 S.Ct. at 2720:

> Finally, Gray urges that we resuscitate the Court's 1935 decision in *Railroad Retirement Board v. Alton R. Co.*, 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468, which invalidated provisions of the Railroad Retirement Act of 1934 that required employers to finance pensions for former railroad employees. Assuming, as we did in *Turner Elkhorn, supra*, 428 U.S., at 19, 96 S.Ct., at 2894, that this aspect of *Alton* 'retains vitality' despite the changes in judicial review of economic legislation that have occurred in the ensuing years, we again find it distinguishable from the present litigation....

We, too, would find the present litigation distinguishable from *Alton Railroad Co.* It is the maintenance of the loan, which continued in its thirty-year term at 7½% interest, and which was subsequently sold at less than face value, that

fully justified by a rational legislative purpose. Where a loan is made between parties closely related in interest there exists an inherent danger of abuse. Congress was within its rights in prohibiting the maintenance of such loans after the enactment of ERISA.

The defendants have also cited to our attention three prohibited transactions submitted to the Department of Labor for administrative exemptions.[13] The Secretary has granted exemptions when the price received by the plan from a party in interest is no less favorable to the plan than the price the plan could obtain from an unrelated party in an arms-length transaction. 29 U.S.C. § 1108(a)[14] uses a case by case approach in granting exemptions. None of the examples cited by the defendants involved parties in interest who were seeking to pay less than the amount they owed under the terms of a prohibited transaction. This difference from the case at

bar dissuades us from considering these examples as precedents favorable to the case of the instant defendants.

Finally, we observe that due process will be accorded the defendants in this very lawsuit, where a full hearing will be given to their arguments to the effect that they have not violated ERISA. Since we cannot find any denial of due process,[15] we must deny the defendants' motion to dismiss on this ground as well.

---

triggered the present action, not a transaction "long since past and closed."

**13.** These are: *International Reserve Equipment Corporation Employees' Profit Sharing Plan et al.; Proposed Exemptions* [Application No. D–3275], 48 Fed.Reg. 5397 (February 4, 1983); *Neurological Associates of Tucson Profit Sharing Plan and Trust (the Profit Sharing Plan) and Neurological Associates of Tucson Money Purchase Pension Plan and Trust (the Pension Plan; Collectively, the Plans) Located in Tucson, Arizona* [Application Nos. D–3722 and D–3723], 48 Fed.Reg. 9393 (March 4, 1983); and *Broman and Woolley Profit Sharing Plan, et al.; Proposed Exemptions* [Application No. D–5272 *et al.*], 12 Pens.Rep. (BNA) 356 (March 4, 1985).

**14.** 29 U.S.C.A. § 1108(a) (West Supp.1990) reads:

**§ 1108. Exemptions from prohibited transactions**

**(a) Grant of exemptions**

The Secretary shall establish an exemption procedure for purposes of this subsection. Pursuant to such procedure, he may grant a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106 and 1107(a) of this title. Action under this subsection may be taken only after consultation and coordination with the Secretary of the Treasury. An exemption granted under this section shall not relieve a fiduciary from any other applicable provision of this chapter. The Secretary may not grant an exemption

under this subsection unless he finds that such exemption is—

(1) administratively feasible,

(2) in the interest of the plan and of its participants and beneficiaries, and

(3) protective of the rights of participants and beneficiaries of such plan.

Before granting an exemption under this subsection from section 1106(a) or 1107(a) of this title, the Secretary shall publish notice in the Federal Register of the pendency of the exemption, shall require that adequate notice be given to interested persons, and shall afford interested persons opportunity to present views. The Secretary may not grant an exemption under this subsection from section 1106(b) of this title unless he affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by paragraphs (1), (2), and (3) of this subsection.

. . . .

**15.** The defendants refer to the Concurrence in *Connolly*, 475 U.S. at 228–236, 106 S.Ct. at 1028–1031, in which Justices O'Connor and Powell suggested, in the context of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), that a remedy not rationally related to the employer's conduct would violate due process. In the instant case, the remedy sought by the Secretary is related to the conduct of Local 98 and EMA. The obligation to pay the outstanding principal on the note arises directly from the original agreement between the parties.